## Payne v. Commonwealth.

(Decided May 1, 1928.)

### Appeal from Calloway Circuit Court.

1. Criminal Law.—Where testimony is conflicting, credibility of witnesses is for jury, and court will not disturb its verdict unless palpably against evidence.
2. Homicide.—Conviction for maliciously and feloniously shooting another with intent to kill held not palpably against evidence, where state's testimony showed that person shot was leaving defendant's house at the time.
4. Criminal Law.—Instruction on self-defense containing expression, unless made a part of the bill of exceptions or made a part of the record and identified by an order of the court.
5. Criminal Law.—Statement of juror after having returned verdict "necessary or apparently necessary to save her life or protect her person from bodily harm than about to be inflicted by said Wells," held not to require reversal on account of clerical error in use of word "than" for "then."
3. Criminal Law.—Instructions cannot be considered on appeal that they had sent defendant to the "pen" and that she was "a mighty mean negro" held not to require new trial, where it was not shown that the particular juror had formed or expressd any opinion before the trial.

JOE H. WEEKS for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Zula Payne was indicted for maliciously and feloniously shooting Robert Wells with intent to kill him. She was found guilty as charged and her punishment fixed at one year's imprisonment. She appeals.

The chief ground relied on for reversal is that the verdict is against the evidence. The evidence for the

commonwealth shows these facts: Robert Wells, Ed Parmer, and Hazel Ingram were driving around in a car. When they got to the house of Zula Payne they stopped and went in. The parties are all Negroes. She had some company in a front room; she was in the kitchen getting supper. Parmer and Ingram stayed in the front room; Wells went back to the kitchen where she was and asked her for a drink of water. She said, ''There is no water here for you.'' He repeated that he wanted a drink. She said, ''Get out of my house!'' He then went back to the front room and said to Parmer and Ingram, ''Boys, let's go,'' and walked on to the front door and went out of the house. In the meantime she left the kitchen and went into the other front room of the house and got a pistol and came to the door with the pistol and shot Wells in the back when he was a few feet from the house as he was going to the car. This was in substance the proof by Wells and his associates.

On the other hand, she testified, and her testimony was sustained by some of her friends whom she was entertaining, that Wells asked her where her husband was; she said he was in the back yard; he answered with an oath, and she said, ''What is the matter?'' He shoved her out of the door and gouged her three times in the side with his pistol. She then went into the front room and got her pistol and went with it to the front door, and when she got to the front door with the pistol Wells shot at her from his pistol, the ball striking the door facing, and she then shot Wells with her pistol.

In cases like this the credibility of the witnesses is for the jury, and the court will not disturb the verdict of the jury unless palpably against the evidence. The fact is Wells was shot just under the shoulder blade in the back; the ball was abstracted under the nipple in his breast. She was in no danger in the kitchen after Wells left, and there seems to have been no necessity for her following Wells to the front door. The jury may well have inferred from all the facts that she went in the other room and got the pistol and went to the front door, after Wells had gone out of the door, for hostile purposes, and the wound Wells received tended to confirm this view of the transaction. It cannot therefore be said that the verdict is palpably against the evidence.

Complaint is made of the instructions of the court to the jury. While certain instructions are copied in the

record and certified by the clerk as the instructions given by the court on the trial, they were not made a part of the record in any way by the court. The rule is that the instructions cannot be considered unless made a part of the bill of exceptions or made a part of the record and identified by an order of court. But the court finds no substantial error in the instructions. The complaint is of the use of the word "than" in the instruction on self-defense in the expression, "necessary or apparently necessary to save her life or protect her person from bodily harm than about to be inflicted by said Wells." But, reading the instruction as a whole, anybody can see that the word "than" is a mere clerical error for the word "then," for in two other places in the instruction the court uses the words "at the time," referring to the time of the shooting.

On the motion for a new trial the defendant filed the affidavit of a witness who stated that a short time after the jury returned their verdict in the case he had a conversation with one of the jury and asked him if the jury had returned a verdict, and he said "Yes; we sent her to the pen. We could do nothing else, she is a mighty mean negro." But this conversation occurred after the jury had been discharged, and for aught that appears may have been based on the impression which the jurymen got from the evidence in the case. There is nothing in it to show that he had formed or expressed any opinion before the trial. On the whole case no error to the prejudice of the defendant's substantial rights appears on the trial.

Judgment affirmed.