IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## WESTERN DIVISION.

---

JACKSON, APRIL TERM, 1898.

---

\* RAILROAD *v.* RAY.

(*Jackson.* April 16, 1898.)

1. DECLARATION. *Claiming exemplary damages.*

It is necessary to set out in the declaration the facts constituting fraud, malice, oppression, etc., upon which a claim for exemplary damages is predicated, but it is not necessary that it be claimed in so many words that some or all of the damages are exemplary or punitive. (*Post, pp. 5, 6.*)

Cases cited and approved: 14 Am. St. Rep., 158; 19 Am. St. Rep., 306; 5 Am. St. Rep., 354.

Cited and distinguished: Burson *v.* Cox, 6 Bax., 360, 363; Ferguson *v.* Moore, 98 Tenn., 343, 350; Fry *v.* McCord, 95 Tenn., 678.

---

\*As to the liabilities to passengers on sleeping cars, there is a review of the authorities in a note to *Mann Boudoir Car Co.* v. *Dupre* (C. C. App., 5 C.), 21 L. R. A., 289.—REPORTER.

17 P—1

Railroad *v.* Ray.

2. COMMON CARRIER.   *Duty of its employes to passengers.*

A passenger of a train is not only entitled to civil treatment at the hands of all the employes, but to their protection, and the railroad company will be held liable for any acts of rudeness and oppression by its employes resulting in an injury to a passenger while on the train, since the safety and proper treatment of the passengers are within the scope of the employment and range of duties of every employe. (*Post, pp. 7, 8.*)

Cases cited and approved: Transportation Co. *v.* Smith, 16 Lea, 498; Eichengreen *v.* Railroad, 96 Tenn., 229; West Mem. Packet Co. *v.* White, 96 Tenn., 229; 44 Am. St. Rep., 489; 32 Am. St. Rep., 87; 42 Am. St. Rep., 33.

3. SAME.   *Conductor or porter of sleeping car is servant of railroad company.*

The conductor or porter of a sleeping car is a servant of the company of whose train his car is for the time being a part, in all matters relating to the safety of its passengers. (*Post, pp. 9, 10.*

Cases cited and approved: Railroad *v.* Dies, 91 Tenn., 180; Railroad *v.* Katzenberger, 16 Lea, 380; 8 Am. St. Rep., 538; 51 Am. St. Rep., 303; 32 Am. Rep., 325.

4. CHARGE OF COURT.   *Explanation of terms not required, when.*

It is not necessary for the Court to define the terms "gross negligence," "fraud," "malice," "cruel or wanton and oppressive conduct," in a charge on the right to punitive damages in an action against a railroad company, where, according to plaintiff's theory, he was rudely pushed or knocked off a train while in motion, and the defendant denies all negligence. (*Post, pp. 6, 7.*)

5. SAME.   *Request properly refused, when.*

A requested instruction, in an action by a passenger against a railroad company for personal injuries, which, in effect, holds that it is incumbent on plaintiff to prove that the proximate cause of the injury was the want of something which, as a general rule, the carrier was bound to supply, or the presence of something which, as a general rule, it was bound to keep out of the way, is properly refused where the liability, if any, is for the positive misconduct of an employe, and not any defect in appliances, machinery, or equipment. (*Post, p. 9.*)

Railroad v. Ray.

6. EVIDENCE.   *Of usual stopping place of train, competent.*

It is competent for a witness to state that a train, at night, usually stopped at a certain place, although he was not present upon the night to which the inquiry relates. (*Post, pp. 10, 11.*)

7. ARGUMENT OF COUNSEL.   *Use of illustrations.*

The trial Court may, in its discretion, permit counsel to illustrate in argument the manner in which an accident may have occurred, by means of a desk in the courtroom, in addition to the articles used for that purpose by the witnesses. (*Post, p. 11.*)

Case cited and approved: Ferguson v. Moore, 98 Tenn., 350.

8. COSTS.   *Of copy of stenographer's notes of evidence upon a mistrial.*

The Court has no authority to tax the cost of transcribing the stenographer's notes, furnished upon the plaintiff's demand, after a mistrial, against the defendant, at whose request the stenographer was employed, under Shannon's Code, §§ 4695 4697, providing that in case of appeal, a transcript of the sten ographer's notes, if one has been employed at the request of a party, shall be made a part of the bill of exceptions, and the party at whose instance the stenographer was employed shall be responsible for his compensation for the work done by him, as the statute merely contemplates the case of an appeal. (*Post, pp. 14, 15.*)

Act construed: Acts 1887, Ch. 217.

Code construed: §§ 4695–4697 (S.).

FROM HAYWOOD.

Appeal in error from Circuit Court of Haywood County.   JNO. R. BOND, J.

A. D. BRIGHT, H. J. LIVINGSTON, and McCORRY & BOND for Railroad.

J. W. E. MOORE for Ray.

WILKES, J.   This is an action for damages for personal injury.   It was tried before the Court and jury, and a verdict and judgment was rendered for $2,500, and the railroad company has appealed and assigned errors.

The facts, so far as necessary to be stated, are that plaintiff bought a coupon ticket from the Louisville & Nashville Railroad Company from Memphis to Jackson, Tenn., intending to stop at Humboldt and transfer, in the night time, to the Mobile & Ohio Railroad.   He had fallen asleep on the train, and about ten o'clock, when it reached Brownsville, he awoke, and thinking he was, perhaps, at Humboldt, he went to the door of the car and got off on the north side, the platform being on the south side.   Looking around, he found that he was mistaken as to the place.   The train started about that time, and he attempted to board the coach again, when, according to his version, while on the steps or platform (and he could not be certain which), he was struck or shoved by a man wearing the uniform of a railroad employe, and his left hand was knocked loose from the railing.   He swung around until his right hand was also twisted from the railing, and then fell on the ground, partly under the car, and his left hand was badly crushed, so that it was amputated, all but the thumb and little finger, and the latter was rendered perfectly stiff.   He suffered great pain, and has virtually lost the use of his left hand.

Railroad *v.* Ray.

The plaintiff was not able to say who it was that struck or pushed him, but thought it was a negro porter, and was certain the person had on the uniform of a railroad employe. The witness was shown the crew of the train and asked to identify the man who struck or pushed him, but was not able to do so. He was not able to give a very satisfactory or definite answer as to which end of the car he went out at, or attempted to re-enter. The theory of the railroad company is, that in attempting to board the train, he fell off, and was not struck or pushed, and evidence is introduced to show the whereabouts of all the train hands or crew, so as to demonstrate that it was impossible for any of them to be present at the time he says he was pushed off.

Eight errors are assigned by the defendant company. The first is to the effect that the Court charged the jury that if the injury was done by the defendant and was the result of gross negligence, fraud, or malice of the defendant, or was inflicted cruelly, wantonly and oppressively, they might give punitive or exemplary damages in addition to compensatory damages. This is said to be error because the declaration made no claim, in terms, for exemplary damages.

When special damages are claimed arising out of a special or peculiar state of facts, they must be averred before they can be proven. *Burson* v. *Cox,*

6   Baxter, 360, 363; *Ferguson* v. *Moore*, 14 Pickle, 343, 350; *Fry* v. *McCord*, 11 Pickle, 678.

There is, however, a difference between special damages and exemplary or punitive damages. Special damages are the natural, but not necessary, result of the injury complained of, and hence they must be specially alleged, in order that the defendant may have notice thereof and be prepared to meet the same upon the trial.

Exemplary or punitive damages are given as a punishment for fraud, malice, gross negligence, or oppression. They are not based upon the nature and extent of the injury so much as they are upon the oppression of the party who does the injury, and the basis is not so much compensation for any special injury as it is a punishment for the *mala fides* of the party doing the injury, and is visited upon him on grounds of public policy.

While it is necessary to set out in the declaration the facts constituting fraud, malice, oppression, etc., upon which the claim for exemplary damages is predicated, it is not necessary that it be claimed, in so many words, that some or all of the damages are exemplary or punitive. *Burson* v. *Cox*, 6 Baxter, 360; 5 Am. & Eng. Enc. Pl. & Prac., 723; *Savannah R. R. Co.* v. *Holland*, 14 Am. St. Rep., 158; *Southern Express Co.* v. *Brown*, 19 Am. St. Rep., 306; *Alabama R. R. Co.* v. *Arnold*, 5 Am. St. Rep., 354.

It is also said that the Court erred in not defin-

ing gross negligence, fraud, malice, cruel or wanton and oppressive conduct—terms used in the charge. We are of opinion that it was not necessary to give a definition of each or any of these terms as applicable to the facts of this case. If the plaintiff was rudely pushed or knocked off the train, the conduct would readily fall under either head. In ·addition, there was no request for such definition or the application of the terms to the facts of the case.

It is said that the Court erred in charging that if plaintiff was pushed from the train by any of the agents or employes of the train, acting in the scope of their employment or authority, the railroad company would be liable, and if done in a grossly negligent or oppressive manner, the railroad company would be liable for punitive damages. It is said the error consists in not stating what acts would be in the scope of the employe's authority or liability. And, in this connection, it is said a railroad company is not liable for the willful and malicious acts of a servant, not authorized or approved or ratified by the master, but perpetrated to gratify the private malice of the servant under mere color of discharging a duty to the master. Unquestionably the latter proposition is correct law as an abstract proposition and when applied to trespassers or third persons not passengers, but there was no evidence tending to show, in this case, any private act of malice, or that the act was done by the wantonness of an individual. On the contrary, the defense was

that no injury was done in any way, and that it was a mere accident, due to plaintiff's carelessness. The plaintiff was a passenger, and the rule is that a passenger is not only entitled to civil treatment at the hands of all employes, but to their protection; and the railroad company will be held liable for any act of rudeness and oppression resulting in injury to a passenger at the hands of any of its employes while on the train, the safety and proper treatment of the passengers being within the scope of employment and range of duties of every employe. *White* v. *Norfolk Railway Co.*, 44 Am. St. Rep., 489; *Richmond Railway* v. *Jefferson*, 32 Am. St. Rep., 87; *Chicago Railroad Co.* v. *Flexman*, 42 Am. St. Rep., 33; *Transportation Co.* v. *Smith*, 16 Lea, 498; *Eichengreen* v. *L. & N. R. R.*, 12 Pickle, 229; *West Mem. Packet Co.* v. *White*, 41 S. W. Rep., 583.

In addition, it may be added that there was no request for additional instructions or for the explanation of terms. The defendant railroad company made four special requests, which were refused. The first in regard to the burden of proof; second, to the effect that proof of injury would not raise any presumption of negligence; third, that the crew of the sleeping car were not to be treated as a part of the crew of the train, and the railroad company would not be liable for their acts, especially in vindictive damages, and, fourth, that plaintiff must prove that he was injured in the manner set out in his declaration, if at all.

Railroad *v.* Ray.

To be more specific, the first request, in substance, was that in case of an injury to a passenger it was incumbent to prove that the proximate cause of the injury was the want of something which as a general rule the carrier was bound to supply, or the presence of something which as a general rule the carrier was bound to keep out of the way.

It is evident that this request is a mere abstraction and has no applicability to the facts of this case. Here the liability, if any, is for the positive misconduct of an employe, and not any defect in appliances, machinery, or equipment.

The ground of the second request was fully covered by instructions in the general charge to the effect that the plaintiff must, in order to recover, prove that he was pushed or knocked off the train by one of the crew, and the jury must also find that it was done by one of the train crew acting in the scope of his employment. As just seen, this instruction was more favorable to the railroad company than the law warranted when the person injured or maltreated is a passenger.

The third request was that the jury be instructed that the conductor and porter of the sleeping car are not a part of the train crew of a railroad passenger train, and, in this connection, it is said the plaintiff could not recover if the wrong was done by either of these employes. The relevancy of this request arises out of the fact that while all of the train crew, except these employes, testified that they

did not push plaintiff off the train, the sleeping car
conductor and porter were not examined. The re-
quest is not the law. It has been held, in a num-
ber of cases, that the conductor or porter of the
sleeper is a servant of the railroad company of whose
train his car is, at the time being, a part, in all
matters relating to the safety of its passengers.
*Williams* v. *Palace Car Co.*, 8 Am. St. Rep., 538;
*Thorpe* v. *N. Y. Ry. Co.*, 32 Am. Rep., 325;
*Evans. & Terre Haute Ry. Co.* v. *Alton*, 51 Am.
St. Rep., 303; *Railroad* v. *Dix*, 7 Pickle, 180;
*Railroad* v. *Katzenburger*, 16 Lea, 380.

As to the fourth request, so far as it is good
law and applicable to the case, it was embraced in
the general charge. The plaintiff must always prove
that he was injured in the manner set out in the
declaration; but this does not mean that he must
make out his proof in the minutest detail to corre-
spond with the statement in his declaration. The
Court charged the jury that the plaintiff must prove
his case as alleged in his declaration, and this was,
in substance, several times repeated and made spe-
cific by adding that they must find that he was
pushed or knocked off the train by some agent or
employe of the company acting within the scope of
his authority.

It is said it was error to allow Covington, the
night watchman at Brownsville, to state, over objec-
tion, the point where the night train usually stopped.
The witness was not present on the night of the in-

Railroad *v.* Ray.

jury, but stated that the train, at night, usually stopped at a certain place, but could not state where it stopped that night. There was other proof to show where it did actually stop, and this does not appear to have been a matter of any serious importance. We are of opinion the evidence was not material, and also that it was not incompetent as a circum- stance cumulative to other evidence so far as it had any bearing on the real issues involved.

It is said the Court erred in allowing the plain- tiff's attorneys to illustrate the manner in which the plaintiff may have been hurt. This was done in the course of the argument, and by means of a desk in the courtroom, a part of its furniture. It seems that counsel for the plaintiff had used two chairs in illustrating their theory of the case, both in examin- ing the witnesses and in the course of the argument, and counsel of railroad commented on it, and the use of the desk was an additional illustration by the plaintiff in his closing argument. The Court, over the protest of the defendant company, allowed the plaintiff to use the desk. This was a matter which addressed itself to the discretion of the trial Judge, and also to the credulity and sound sense of the jury. Within proper bounds, the Court will not interfere with the manner of presenting a case by counsel. *Ferguson* v. *Moore*, 14 Pickle, 350. And we are unable to see that any injury could result from such illustrations. As to whether they were plausible or not was for the jury to decide.

It is said, finally, that there is no evidence to support the verdict. From what has already been stated, it will be seen that the whole controversy must turn upon the question whether the plaintiff was pushed or knocked off the train by an employe of the railroad, or whether he fell off in his efforts to get back on the train after getting off himself. It is the testimony of all the trainmen, except the conductor and porter of the sleeping car, who did not testify, that they did not do it, and they give evidence to show that they were not at the place or in such position as to have done the act. On the contrary it is positively stated by the plaintiff that he was pushed off by one of the train crew in uniform. Much stress is laid upon the indefiniteness of the plaintiff's statement as to where he was when he was pushed off—that is, whether on the steps or platform of the car—and the fact that he could not identify any one of the crew as the person who did the act, although they were all shown to him. But we think the jury perhaps considered the facts that it was night, and more or less dark; that the plaintiff had been suddenly aroused from sleep; that he had become confused as to his whereabouts, thinking he was at Humboldt, when in fact he was at Brownsville; that he attempted hurriedly to re-enter the car when he ascertained his mistake; that he could not have been expected to be put off or pushed down, and that the whole matter occurred in a very short time, and that he may have been mistaken for a

tramp entering the train on the wrong side. The jury, in this view of the case, may very well have considered his statements sufficiently definite under all these circumstances.

It appears that the inside of the plaintiff's right hand was bruised as if it had been done by firmly grasping something which turned in his hand, and it is said that this tends to support his statement that he clung to the railing with that hand, but this might have happened on either theory. It is shown that several of the crew got off and back on the train at different places when the train was at Brownsville. One of the crew, Foreman, states that he was on the platform talking to the operator and ticket agent when the train was waiting, and, when the train started, he says he got on it on the front end of the rear car, which was the Nashville coach. His testimony, to some extent, is contradicted by Martin. The whole matter was submitted to the jury, and they have seen proper to believe the theory of the plaintiff, and it is plausible and has some evidence to support it.

It is said the verdict is excessive. We do not so regard it, looking at it in the light the jury must have regarded it, in order to give any verdict whatever. If the railroad was liable at all, it was for the improper and oppressive treatment of the plaintiff as a passenger, and, viewed from that standpoint, the verdict is not excessive, and the judgment is affirmed with costs.

A stenographer was sworn, under the Act of 1887, Chap. 217 (Shannon, § 4695-97), to take down the testimony in the case, at the instance and request of defendant. The statute provides that in such cases the stenographer shall be sworn to make a true, impartial, and complete stenographic report of all the oral testimony given in the cause. And, in case of appeal, a transcript of the stenographic notes shall be made part of the bill of exceptions, subject to correction by the presiding Judge, and the party alone at whose instance the stenographer was employed shall be responsible for his compensation for the work done by him.

On the second trial, which resulted in a mistrial, a stenographer was sworn, and, after mistrial was had, on motion of counsel for plaintiff, and over defendant's objection, the Court required him to transcribe his notes and file the same, and taxed the cost to the railroad.

It is now objected that the statute does not require the notes of the stenographer to be transcribed, except where appeal is taken, and that it was error to require it to be done in this case at the plaintiff's instance, and make the defendant pay the costs. We are of the opinion the Court, in this case should not have charged the cost of transcribing the stenographic notes into writing to the railroad company. There being a mistrial, and no appeal being possible, no transcript was necessary for purposes of appeal. It could only have been useful to either party

Railroad *v.* Ray.

in preserving the testimony in view of a future trial. If either party desired, for this or other purpose, to have it transcribed, he should have been required to pay the cost of this transcribing, the other stenographer's cost being paid by the party by whom he was requested to do the work.

We are of opinion the trial Judge was in error in this matter of the cost of transcribing the notes, and this error will be corrected, and, in all other respects, the judgment of the Court below is affirmed, with costs.