## GARNER et al. v. STATE ex rel. ASKINS.—266 S. W. (2d) 358.

Middle Section.   December 4, 1953.

Petition for Certiorari denied by Supreme Court, April 16, 1954.

John F. Green and Pat B. Lynch, both of Winchester, for plaintiff in error Fidelity & Casualty Co. of New York.

Brown Weddington, of Winchester, for plaintiff in error J. B. Garner.

Joe S. Bean and Joe R. Hickerson, both of Winchester, for defendant in error.

FELTS, J.   This action was brought by Billy T. Askins against J. B. Garner, a Constable, and the Fidelity and Casualty Company of New York, surety on his official bond, to recover damages for an assault and battery committed by the Constable upon plaintiff while arresting him for an alleged traffic violation.

Plaintiff averred in his declaration that, while acting officially and arresting him, the Constable, without any justification or excuse, beat him over the head with a blackjack, knocked him down twice, lacerated his scalp, fractured his skull, and inflicted other painful and serious permanent injuries upon him.

The defendant surety company pleaded *non assumpsit, nil debet,* and not guilty.   The defendant Constable pleaded the general issue of not guilty, though on the trial he did not deny committing the assault and battery and striking plaintiff with the blackjack.   The only defense he attempted was rather in the nature of a claim of self-defense or justification, which was not open under the general issue.   History of a Lawsuit, 7th ed., by Gilreath, Sec. 215, and cases there cited.

The jury returned a general verdict for plaintiff against both defendants for $4,000 compensatory damages and $50 punitive damages, or a total of $4,050.   A judgment was entered upon this verdict in favor of plaintiff against defendants for $4,050 and costs.

Upon motions for a new trial by defendants, the Trial Judge suggested a remittitur of $3,300 of the judgment for compensatory damages, reducing it to $700.   Plaintiff made the remittitur under protest, defendants' motions were overruled, and judgment was entered for plaintiff

against J. B. Garner, as principal, and the Fidelity and Casualty Company of New York, as surety, for $700 compensatory damages, $50 punitive damages, totaling $750 and the costs.

Defendants appealed in error and have assigned a number of errors in which the Constable and his surety rely upon the same matters, and the surety urges an additional defense peculiar to itself. Plaintiff also appealed and has assigned for error the action of the Trial Judge in suggesting the remittitur.

We first consider the questions made by defendants' assignments of error. Their first assignment is that there is no material evidence to support the verdict.

Plaintiff was 25 years of age, married, lived at Fayetteville, Tennessee, and was employed as a truck driver by the Farmers Auction Company. He was a young man of good character, had never been in any trouble, and had never been arrested before his arrest on the occasion in question.

That was June 24, 1952. Plaintiff was driving a large truck for his employer, returning from Knoxville, via Chattanooga, Sewanee, Cowan and Winchester to Fayetteville. It was about 8:30 or 9:00 o'clock in the morning. Defendant Garner was travelling the same way over the same highway, going from Sherwood to Winchester. He was driving an old 1938 Chevrolet automobile, Bud Smith who had been an officer riding with him, both of them dressed in overalls with nothing to indicate that the Constable was an officer.

Between Sewanee and Cowan plaintiff overtook and passed the automobile in which Garner and Smith were riding. As he was entering the corporate limits of Cowan, Garner and Smith overtook and passed plaintiff's truck and waved at him. Plaintiff, not knowing them,

thought they were a couple of "drunks" waving to him, and paid no further attention to them.

As he reached Winchester the traffic lights were green, he went on, driving about 30 miles per hour, without knowing he was being pursued. As Garner's car passed by the court house he saw the Sheriff, whose car was parked there, and asked the Sheriff to join in the pursuit. Also, a Coffee County Deputy Sheriff happened to be present and he joined with his car, which was equipped with a siren.

As plaintiff neared the outskirts of Winchester he heard this siren, at once pulled over to the side of the road, stopped in front of Chastain's Filling Station, and the three cars pulled up and stopped. According to plaintiff's testimony, accredited by the jury, he asked the Sheriff what he had done. The Sheriff said, "I don't know. I am just stopping you."

Then Garner and another man walked up to the truck. Plaintiff was sitting in the cab with the door open. Garner grabbed his arm, cursed him, jerked him out of the truck, struck him with a blackjack on the side of the head across the ear, knocked him down, struck him again on top of the head, lacerating his scalp and fracturing his skull.

Chastain, a disinterested bystander, conceded to be a man of high character, said that the two men took hold of plaintiff—one by one arm and the other by the other—and Garner started striking him in the face and over the head with a blackjack; struck him four or five times; that the blows did not knock him down because "he couldn't fall, they were holding him." Chastain also said that he told the Sheriff, "That's a dirty shame for a man to beat a boy up like that"; and the Sheriff said, "That's brutal."

Garner and the other man put plaintiff in Garner's car, took him to the court house and lodged a charge of reckless driving against him. When he was released from their custody, plaintiff was taken to the Franklin County Hospital, where his wounds were treated. He later went to Dr. Marshall in Fayetteville where he was X-rayed, found to have a fractured skull, and was treated.

▮▮ So there was ample material evidence to support the verdict. Indeed, since the Constable admitted he struck plaintiff on the head with a blackjack and since his attempted defense of justification could not be made under the general issue, plaintiff would have been entitled to a directed verdict upon the issue of liability against the Constable. Byrd v. Bullion, 148 Tenn. 496, 256 S. W. 245.

Defendants insist that the judgment below should be reversed and a new trial granted because of misconduct of one of plaintiff's counsel in making inflammatory and misleading statements in his argument to the jury. The argument objected to was in respect of the liability of the bonding company, and perhaps the most objectionable part of it was as follows:

"Mr. Bean: Mr. Green is up here, Mr. Green is up here defending this bonding company, bonding company, the defendant here, and you know and I know whether right or wrong he is seated here defending them in every case where insurance is involved. You will give us $5,000, it won't be a dime out of Garner's pocket.

"Mr. Green: Your Honor, I object to that.

"The Court: Yes, that is not right, that's right.

"Mr. Green: Ask to strike that. I move for a mistrial, Your Honor.

"The Court: Garner is orginally liable.

"Mr. Bean: Withdraw it if it's wrong.

"The Court: That's right, they're not originally liable at all."

Thus, it will be noted that the Trial Judge sustained the objection to the extent of undertaking to correct counsel's misstatement, but did not rule on the motion for a mistrial. The movant did not ask for such a ruling. The Trial Judge cannot be put in error as to a matter upon which he did not rule. He did take pains to make further correction of this matter in his charge to the jury by this clear statement:

"The bonding company has no liability separate and apart from that of Garner, of the defendant, and Garner, of course, is primarily liable, they are only secondarily liable and Garner would then have no liability apart—they would have no liability apart from Garner at all, and that statement is made on account of argument of counsel."

In view of this instruction correcting the misstatement complained of, we think the matter cannot be regarded as prejudicial error or ground for reversal. Marion Construction Co. v. Steepleton, 14 Tenn. App. 127, 147.

It is said, however, that this misstatement in the argument of counsel for plaintiff misled the jury and caused some of them to base their verdict on a misunderstanding of the law; and affidavits of two of the jurors were offered by defendants on the motion for a new trial in an effort to support this insistence.

It is well settled that affidavits of jurors as to what influenced them in reaching a conclusion cannot be received to impeach their verdict, and that jurors will not be allowed thus to stultify themselves. Waller v. Skele-

ton, 31 Tenn. App. 103, 120, 212 S. W. (2d) 690; Norris v. Richards, 193 Tenn. 450, 456, 246 S. W. (2d) 81, 84.

Two of the grounds assigned by defendants in their motion for a new trial were that the verdict was excessive and that it was so excessive as to indicate passion, prejudice or unaccountable caprice in the part of the jury. Defendants assign these same grounds for error here and insist that the verdict, even as reduced by the remittitur, is still excessive.

We think these assignments of error are without merit, for the reasons hereinafter stated in connection with plaintiff's assignment of error upon the action of the Trial Judge in suggesting the remittitur.

Defendant, Fidelity and Casualty Company, urges, as an additional defense, that it was not a surety on the Constable's bond covering his term of office from September 1, 1950, to September 1, 1952, during which the assault was committed; and that the Trial Court erred in admitting proof of the official bond for that period by parol evidence.

It appears in the evidence, without dispute, that Garner was elected Constable in the August, 1948, election and qualified on September 1, 1948, by taking the oath and giving a bond as required by our statutes, with defendant, Fidelity, and Casualty Company, as his surety on this bond. It was payable to the State of Tennessee in the penal sum of $5,000 and was conditioned as follows:

"* * * The condition of the above obligation is such that whereas, the said J. B. Garner has been duly and constitutionally elected constable for District Number Twelve in the County of Franklin for the ensuing two years. Now, if the said J. B. Garner shall faithfully discharge the duties of his office and pay over and account for all the moneys by him

collected by virtue of his office, to the persons or person authorized to receive the same, and in all other respects discharge the duties of said office, according to law, then this bond to be void, otherwise, to remain in full force."

Garner continued in office as Constable, was re-elected in August, 1950, but made no attempt to qualify for this second term. Instead, he held over in office, acted as Constable, was recognized as such by everyone, and he paid defendant, Fidelity and Casualty Company, the premiums to continue and keep his bond in force from September, 1950, to September, 1952, and the surety accepted the premiums for that purpose.

Under our Constitution every civil officer holds his office for the term fixed and "until his successor is elected or appointed and qualified". Art. 7, Sec. 5. By statute the Constable's term was for two years, "*and until the qualification of his successor*". Code Sec. 722 (italics added). He was required to give bond in the penalty of not less than $4,000 nor more than $8,000, "conditioned for the faithful discharge of the duties of said office". Code Sec. 723.

Our statutes also require the bond of every public officer, unless otherwise provided, shall be conditioned "faithfully to discharge the duties of such office *during the time he continues therein,* or in the discharge of any part thereof". Code Sec. 1823 (italics added). Code Section 1833 further provides:

"Every official bond executed under this Code is obligatory on the principal and sureties thereon—

"(1) For any breach of the condition *during the time the officer continues in office* or in the discharge of any of the duties of such office. (Italics added.)

"(2) For the faithful discharge of the duties which may be required of such officer by any law passed subsequently to the execution of the bond, although no such condition is expressed therein.

"(3) For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by the failure to perform, or the improper or neglectful performance, of the duties imposed by law."

■ This was an official bond executed by the Constable and the surety, and it must be presumed that it was executed with these provisions of the law in mind; and such provisions are to be read into the bond and considered as a part thereof. Under them the Constable's term was for two years *"and until the qualification of his successor"*; and the duration of the bond was two years "and until the qualification of his successor", or during the time he continues in office or in the discharge of any of the duties thereof.

■ He continued to hold over in office and to perform the duties thereof, and he paid the surety the premiums to continue the bond in force, and it accepted such premiums for that purpose. So we think the case comes within the general rule which is well stated by 43 Am. Jur., Public Officers, Sec. 431, p. 201, as follows:

"Where the officer is entitled, by statute or otherwise, to hold over in the office until a successor has been elected and qualified, it is generally held that the sureties continue liable on the bond until the election and qualification of a successor: The theory most commonly relied on is that in such a case the period following the expiration of the term is not a separate and distinct period unrelated to the term for which the sureties had agreed to become bound, but

is really a part of the original term. The sureties must be presumed to have executed the bond with the law in mind, and to have assumed a liability equal to the possible duration of the officer's tenure in the office.''

Our conclusion is that the bond remained in force during the time the Constable held over and remained obligatory on him and the surety for the use of every person injured by any wrongful act committed by him either by virtue of his office or under color of his office, Code Sec. 1833; Marable v. State ex rel., 32 Tenn. App. 238, 244, 222 S. W. (2d) 234; and that the jury could properly find that the principal and the surety were liable on this bond for the damages for the assault and battery sued for.

This brings us to plaintiff's assignment of error through which he insists that the Trial Judge should not have suggested the remittitur, reducing the judgment from $4,050 to $750, and that this Court should reverse this action of the Trial Judge and restore the judgment to the full amount originally awarded by the jury.

As we have seen, the Constable arrested plaintiff for a petty misdemeanor and then, without any justification or excuse, committed a brutal assault and battery upon plaintiff by beating him over the head with a blackjack, and inflicted serious, painful and permanent injuries upon him.

It appears from the bill of exceptions that the Trial Judge, in suggesting the remittitur, stated: ''He (plaintiff) wasn't hurt, just his feelings, and he ought to have been convicted, of course, guilty of the offense under the proof.''

With deference to His Honor, we think this was a grave mistake. Whether plaintiff was guilty, or ought

to have been convicted of the traffic violation, was wholly immaterial. This was a matter for the Court to determine and not the Constable. If plaintiff was guilty, that could not justify or mitigate the Constable's savage attack upon the prisoner in his custody.

It is also a great mistake to say that plaintiff "wasn't hurt, just his feelings." The evidence, accredited by the jury, was that the Constable jerked plaintiff out of the truck, cursed him, struck him on the side of his head and across his ear with a blackjack, knocked him down, struck him again with the blackjack on top of the head, lacerated his scalp and fractured his skull.

Thus his injuries were a concussion and fractured skull, so that now he is subject to spells of dizziness and severe headaches; a blow on the side of his head that injured his ear and to some extent impaired his hearing so that now he suffers a buzzing noise when he exerts himself and gets hot; and he suffered great physical pain and mental anguish.

Plaintiff was entitled to recover compensation for all his injuries—those already suffered and those he is reasonably certain to suffer—including an allowance for his physical pain and mental anguish, for the affront to his personality, the indignity, disgrace, humiliation and mortification to which he was subjected by the conduct of this peace officer. 4 Am. Jur., Assault and Battery, sec. 182, p. 213.

It is true that there are no set rules for determining the amount of damages which a plaintiff is entitled to recover for the wrongful conduct of an officer in a case like this. There is a wide range of variation in amounts in cases more or less similar, but there are numerous cases more or less similar to this in which there were larger judgments than the amount originally fixed by the jury

in this case. See cases collated in the annotation, 16 A. L. R. (2d) 55-60, citing, among others, Hughes v. Taylor, 29 Tenn. App. 548, 198 S. W. (2d) 337.

■■ ■■ We think the amount allowed by the jury's verdict was not excessive for the wrong and the injuries shown and that the verdict of the jury should not have been reduced, and the remittitur should not have been suggested. Such being our opinion, the statute makes it our duty to reverse this action of the Trial Judge and to restore the judgment to the full amount originally awarded by the verdict of the jury. Sec. 8987, 1950 Supp. to Code of Tenn.

■■ All of the assignments of error of defendants are overruled. Plaintiff's assignment is sustained. A judgment will be entered here reversing the action of the Trial Judge in suggesting a remittitur and restoring the judgment to the full amount originally awarded by the jury. As thus modified, the judgment of the Circuit Court will be affirmed. The costs of the appeal in error are adjudged against defendants and the sureties on their appeal bonds.

Howell, J., concurs.

Hickerson, J., not participating.