FRANCES JEAN LAZENBY, a Minor by next friend,
MARY FRANCES LAZENBY,

*v.*

UNIVERSAL UNDERWRITERS INSURANCE COMPANY,
a Corporation, and
NORMAN FRANK CRUTCHFIELD.

383 S.W.2d 1

(*Jackson,* April Term, 1964.)

Opinion filed October 9, 1964.

640

CHIAPELLA & PARISH, Memphis, WILBURN J. CHIAPELLA, Memphis, of counsel, for appellee.

MCDONALD, KUHN, MCDONALD, CRENSHAW & SMITH, Memphis, EDWARD W. KUHN, Memphis, of counsel, for appellants.

MR. JUSTICE DYER delivered the opinion of the Court.

Frances Jean Lazenby, a minor, by next friend, Mary Frances Lazenby, were the complainants below and Universal Underwriters Insurance Company was the defendant below and will be referred to herein as complainant and defendant, respectively.

Complainant, in the Circuit Court of Shelby County, secured a judgment against Norman Frank Crutchfield in the total amount of $4,000.79, of which $1,087.00 represented punitive damages, as a result of personal injuries sustained by complainant in an automobile accident due to the negligence of said Norman Frank Crutchfield. Crutchfield was driving his vehicle in an intoxicated condition. Defendant is the insurance carrier on the Crutchfield car and has paid the amount of the compensatory damages but has failed and refused, under their insurance contract, to pay the amount awarded as punitive damages. The suit in the case at bar was filed to secure judgment against defendant for the punitive damages. The Chancellor found for complainant and defendant has appealed to this Court since the cause was heard on agreed stipulation of facts.

The provision of the policy under which defendant would be liable, if liable, is as follows:

"Coverage A—*Bodily Injury Liability*. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at anytime resulting therefrom sustained by any person caused by accident and arising out of ownership, maintenance or use of the automobile."

In argument before the bar of this Court and in the excellent briefs filed there is raised one question simple to state, but difficult to answer, to wit: In Tennessee, as a matter of public policy, is an automobile liability insurance carrier required to pay punitive damages assessed against their assured, as the result of an automobile accident. It should be kept in mind the issue here is not the liability of the assured defendant to pay punitive damages, only the liability of his insurance carrier to pay them.

In support of his position Counsel for defendant cites and principally relies upon the case of *Northwestern National Casualty Company v. McNulty*, 307 F.2d 432 (5 C.C.A. 1962). This case arose in the State of Florida on an insurance policy made and issued in the State of Virginia. Counsel for defendant states, in his brief, that his position in this cause is well set forth by Judge Wisdom in the McNulty case as follows:

"The argument that insurance against punitive damages would contravene public policy is sometimes said to rest on the doctrine that 'no one shall be permitted to take advantage of his own wrong.' Mr. Justice Cardozo in *Messersmith v. American Fidelity Co.*, 232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876 (1912). That doctrine is not necessarily applicable to cases of auto-

mobile liability insurance covering punitive damages. In such cases the public policy against coverage is not so much to prevent encouragement of wrongdoing by obstructing the hopes of profit; it is rather to make effective the discouragement of wrong-doing by the imposition of punishment. When a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent." *Northwestern National Casualty Co. v. McNulty,* supra.

In the McNulty case Judge Wisdom wrote the opinion for the majority. Judge Gewin wrote a separate specially concurring opinion. Judge Wisdom further states in his opinion as follows:

"Considering the theory of punitive damages as punitory and as a deterrent and accepting as common knowledge the fact that death and injury by automobile is a problem far from solved by traffic regulations and criminal prosecutions, it appears to us that there are especially strong public policy reasons for not allowing socially irresponsible automobile drivers to escape the element of personal punishment in punitive damages when they are guilty of reckless slaughter or maiming on the highway. It is no answer to say, society imposes criminal sanctions to deter wrongdoers; that it is enough when a civil offender, through insurance, pays what he is adjudged to owe. A criminal

conviction and payment of a fine to the state may be atonement to society for the offender. But it may not have a sufficient effect on the conduct of others to make the public policy in favor of punitive damages useful and effective. So, at least, seems to be the policy of Florida and Virginia. To make that policy useful and effective the delinquent driver must not be allowed to receive a windfall at the expense of the purchasers of insurance, transferring his responsibility for punitive damages to the very people—the driving public—to whom he is a member. We are sympathetic with the innocent victim here; perhaps there is no such thing as money damages making him whole. But his interest in receiving non-compensatory damages is small compared with the public interest in lessening the toll of injury and death on the highways; and there is such a thing as a state policy to punish and deter by making the wrongdoer pay.'' *Northwestern National Casualty Company v. McNulty,* supra.

Judge Gewin in his separate specially concurring opinion states as follows:

''The more appropriate basis upon which to hold that public policy prohibits insurance against liability is the nature of the conduct of the wrongdoer—not the nature of the damages awarded. If the defendant acted willfully, intentionally, maliciously or fraudulently, coverage should be denied; because, in such circumstances, he should not be able to avoid punishment by shifting the penalty to an insurance carrier. I doubt that such protection is ever afforded by insurance, because the companies who are experienced in such matters and who write the contracts, expressly exclude

such conduct from the protection afforded by the policy. * * *

"All of us are concerned with the high death toll and personal injuries occurring on the highways, but I am somewhat skeptical that the prohibition of insurance against liability for punitive damages will accomplish the results expected by the majority. There is no certain measuring stick to determine the effectiveness with which the law operates in a given field, but all the states have rather strict criminal laws relating to the operation of motor vehicles. If the criminal penalties provided by such statutes fail to deter the wrongdoers, I seriously doubt that closing the market to insurance coverage will do so. As a matter of fact, it is my judgment that the opposite result will follow. * * *

"It is also quite apparent that my brothers of the majority are looking at this question from one direction only—from the point of view of the nature of the wrong which caused the injury. What about the injured party? Implicit in the entire field of tort liability and insurance law is the concept of furnishing some protection to those who are injured. Public policy is involved here to a greater extent. What will society do with the thousands who are injured daily and to some of whom punitive damages are awarded." *Northwestern National Casualty Co. v. McNulty*, supra.

The holding of the court in the McNulty case is based first on the finding, in Florida and Virginia, that the dominant purpose of punitive damages is not as compensation for a plaintiff, but rather as punishment for a defendant, and as a deterrance to him and others from repetition of the wrongful conduct. Then the Court

accepts, as common knowledge, that death and injuries are wrought daily on our roads and streets and it is and should be the public policy of the State to establish sanctions against socially irresponsible drivers causing or contributing to such conditions. That the allowance of punitive damages against these drivers is one of the sanctions against such conduct. Then to allow one to insure himself against this punishment, which in effect transfers the penalty to the premium paying public, is inconsistent with the establishment of the sanctions and violative of the public policy of the State.

██ The doctrine of punitive damages is well established in Tennessee although there have been several judicial statements challenging the efficacy and soundness of the doctrine. Such damages are allowed, after an award for compensatory damages, in negligence cases when there has been some willful misconduct, or entire want of care which would raise the presumption of a conscious indifference to consequences. In such cases the interest of society and of the agreed individual are blended and such damages are allowed as punishment for such conduct and as an example or warning to the one so guilty, and others, in order to deter them from committing like offenses in the future. Such damages are not based so much upon the nature and extent of the injury as they are upon the oppression of the party who does the injury. *Louisville & N. Railroad Co. v. Ray*, 101 Tenn. 1, 46 S.W. 554 (1898), *Cumberland Telephone & Telegraph Co. v. Shaw*, 102 Tenn. 313, 52 S.W. 163 (1899), *Knoxville Traction Co. v. Lane*, 103 Tenn. 376, 53 S.W. 557, 46 L.R.A. 549 (1899), *Union Railway Company v. Carter*, 129 Tenn. 459, 166 S.W. 592 (1914), *Stepp v. Black*, 14 Tenn.App. 153 (1913), *Walgreen Co. v. Wal-*

*ton,* 16 Tenn.App. 213, 64 S.W.2d 44 (1932), *Herstein v. Kemker,* 19 Tenn.App. 681, 94 S.W.2d 76 (1936), *Allen v. Melton,* 20 Tenn.App. 387, 99 S.W.2d 219 (1936), *Nashville, C. & St. L. Ry. v. Harrell,* 21 Tenn.App. 353, 110 S.W.2d 1032 (1937), *Pratt et al. v. Duck,* 28 Tenn. App. 502, 191 S.W.2d 562 (1945), *Southwestern Aviation v. Hurd,* 209 Tenn. 639, 355 S.W.2d 436 (1961), *Liberty Mutual Insurance Company v. Stevenson,* 212 Tenn. 178, 368 S.W.2d 760 (1963).

Although the dominant purpose for the allowance of punitive damages in Tennessee is similar to Florida and Virginia, as found by the Fifth Circuit Court in the McNulty case, we do not reach the same conclusion as the Fifth Circuit on the public policy issue for the following reasons.

██ FIRST. We accept, as common knowledge, the fact death and injuries on our highways and streets is a very serious problem and such is a matter of great public concern. We further accept, as common knowledge, socially irresponsible drivers, who by their actions in operation of motor vehicles, could be liable for punitive damages are a great part of this problem. We, however, are not able to agree the closing of the insurance market, on the payment of punitive damages, to such drivers would necessarily accomplish the result of deterring them in their wrongful conduct. This State, in regard to the proper operation of motor vehicles, has a great many detailed criminal sanctions, which apparently have not deterred this slaughter on our highways and streets. Then to say the closing of the insurance market, in the payment of punitive damages, would act to deter guilty drivers would in our opinion contain some element of speculation.

■ SECOND. The language in the insurance policy in the case at bar, which is similar to many types of liability policies, has been construed by most courts, as a matter of interpretation of the language of a policy, to cover both compensatory and punitive damages. Since most courts have so construed this language in the policy, we think the average policy holder reading this language would expect to be protected against all claims, not intentionally inflicted.

■■ THIRD. There is often a fine line between simple negligence and negligence upon which an award for punitive damages can be made.

Public policy is the present concept of public welfare or general good. *State ex rel. Loser v. National Optical Stores,* 189 Tenn. 443, 225 S.W.2d 263 (1949), *Ford Motor Company v. Pace,* 206 Tenn. 559, 335 S.W.2d 360 (1960). Public policy is practically synonymous with public good and unless the private contract is in terms of such a character as to tend to harm or injure the public good, public interest on public welfare or to violate the Constitution, laws, common or statutory, or judicial decisions of the State, it is not violative of public policy nor void on that account. *Home Beneficial Association v. White,* 180 Tenn. 585, 177 S.W.2d 545 (1944).

■ The insurance contract in the case at bar is a private contract between defendant and their assured, Norman Frank Crutchfield, which when construed as written would be held to protect him against claims for both compensatory and punitive damages. Then to hold assured, as a matter of public policy, is not protected by the policy on a claim for punitive damages would have the effect to partially void the contract. We do not think

such should be done except in a clear case, and the reasons advanced do not make such a clear case.

We recognize there are many factors, pro and con, involved in this matter that have not been discussed in this opinion; such as the possible affect on insurance rates paid by the public and the possible conflict of interest between the insurance company and their assured at the trial. We have weighed a great many such factors and suffice to say we do not think they are determinative of the matter.

Judgment affirmed.

BURNETT, CHIEF JUSTICE, CLEMENT, SPECIAL JUSTICE. and HOLMES, JUSTICE, concur.

MR. JUSTICE WHITE concurs in an especially concurring opinion.

MR. JUSTICE WHITE (concurring).

I believe the conclusion arrived at in the opinion prepared for the Court by Mr. Justice Dyer to be correct, but for the reasons herein appearing I desire to file this concurring opinion.

The two issues to be decided in this case are: (1) does the policy in question cover the insured's liability for punitive damages "arising out of ownership, maintenance or use of the automobile"; and (2) if punitive damages are covered by the terms of the policy allowing the insured to protect himself against loss by purchasing an automobile liability insurance policy, is such a contract contrary to the established public policy of this State? My answer to the first issue is yes and to the second the answer is no.

Although I agree with the conclusion reached on both of the above questions, I desire to elaborate as follows:

The policy contract provides under Coverage A "that the insurance company will pay on behalf of the insured *all* sums which the insured shall become *legally* obligated to pay as damages, * * *", etc. (Emphasis supplied.)

The mere reading of the language of the quoted provision of the policy is sufficient to convince me that the company is obligated to pay all damages assessed against the insured growing out of the ownership, maintenance or use of the automobile listed in the policy.

"* * * (I)t is clear that the average insured contemplates protection against claims of any character caused by his operation of an automobile, not intentionally inflicted." 7 Appleman, Insurance Law and Procedure, Section 4312, p. 132 (1962).

There is no indication in the case at bar that the insured willfully, that is intentionally, inflicted the injuries giving rise to this lawsuit. On the contrary, the allegation is that the injuries resulted from the insured's negligence.

Crutchfield had been operating his automobile while intoxicated, but there is no allegation that he intended to inflict bodily harm or injuries upon the plaintiff. The declaration says that the plaintiff was injured in an automobile accident "due to the negligence of said Norman Frank Crutchfield."

The facts might support the jury in finding his negligent conduct to be wanton or gross, but certainly not as willful under the allegations of the declaration.

Gross negligence has been defined as "such entire want of care as would raise a presumption of a conscious indifference to consequences." *Inter-City Trucking Co. v. Daniels,* 181 Tenn. 126, 129, 178 S.W.2d 756, 757 (1944).

In Daniels this Court equated for all practical purposes wanton and gross negligence. It is apparent, therefore, that coverage under the automobile policy of Crutchfield should not be denied on the ground that his conduct was intentional or willful in this case.

Practically every decision on the point raised has concluded that coverage did exist under policies having substantially the same language, as here. *General Casualty Co. of America v. Woodby,* 238 F.2d 452 (6 C.C.A.Tenn. 1956); *Pennsylvania Threshermen and Farmers Mutual Casualty Insurance Co. v. Thornton,* 244 F.2d 823 (4 C.C.A.1957); and *United States Fidelity and Guaranty Co. v. Janich* et al., 3 F.R.D. 16 (S.D.Cal.1943).

Another factor lending strength to the argument that such coverage exists is the principle that "equivocal clauses in insurance policies (are) to be construed against the insurer." 63 Col.L.Rev. 944, 949 (1963). Of course, the basic underlying principle for construing policies strongly against the insurer where there are ambiguities or equivocal clauses is that the insurer writes its policies and the law presumes they are written favorably to the one who drafts them. The Tennessee cases of *Universal Life Insurance Co. v. Lillard,* 190 Tenn. 111, 228 S.W.2d 79 (1950), and *English et al v. Virginia Surety Co.,* 196 Tenn. 426, 268 S.W.2d 338 (1954), are in accord with this principle.

I, therefore, am in agreement with the prime opinion that the insurance policy in question would prompt the

average policyholder to expect to be protected under circumstances, as here. I disagree, however, that such expectation affords the basis of distinguishing on the public policy grounds the result reached in *Northwestern National Casualty Co. v. McNulty*, supra, from that reached in the instant case.

(2) Having disposed of the question of coverage under the policy for all legal liability of the insured, I shall now discuss the public policy issue. It is true that most cases which uphold insurance protection for payment of punitive damages awarded against an assured fail to discuss the public policy question. However, it does not follow, *a fortiori*, that such cases would have reached a contrary result if the public policy issue had been squarely met and passed on. I believe the idea is implicit in the cases that such insurance protection does not violate public policy.

In the early years of the casualty insurance business it was argued by some that by allowing one to insure against his own negligent acts that carelessness would be encouraged, resulting in increased injuries and deaths on the highways. Regardless of the soundness of this idea, the insurance industry has grown and prospered and has become a stable part of our economy.

In *Miller v. United States Fidelity & Guaranty Co.*, 291 Mass. 445, 197 N.E. 75 (1935), it was said: "There is nothing against public policy in the making or enforcement of a contract of insurance of this kind [that is casualty insurance]."

The thought that insurance protection providing for the payment of compensatory damages awarded for

gross or wanton negligence would result in increased recklessness was next advanced and argued. In the case of *Travelers Insurance Co. v. Reed Co.*, 135 S.W.2d 611 (Tex.Civ.App.1939), this argument was rejected.

In the McNulty case insurance protection was disallowed in order that the insured might be punished for his wrongdoing and to deter him and others from similar conduct. Yet, on identical facts, another jury might have returned an award limited to compensatory damages only in which case the wrongdoer would be fully protected under provisions of a policy such as here.

The line of demarcation between the allowance of punitive damages and compensatory only is too thin and exacting in my opinion to apply coverage in the one case and deny coverage in the other. Verdicts of juries are unpredictable.

Figures are not available to show the percentage of cases where punitive damages are allowed, but I am confident such awards are unusual rather than usual.

In the gross or wanton negligence case, the wrongdoer is protected by his insurance policy without question. How then can it be logically argued that as a general rule a denial of insurance protection for payment of punitive damages will deter the wrongdoer? As far as punishment is concerned it should be the nature of the misconduct rather than the purpose of punitive damages which is determinative. For willful wrongdoing the State, acting through it criminal statutes, may, and quite often does, inflict punishment by way of fine or imprisonment, or both.

The allowance of punitive damages is well engrained in the case law of this State. As a matter of fact, many

cases have upheld the right of a plaintiff to recover punitive damages from someone other than the immediate wrongdoer. In the case of *Knoxville Traction Co. v. Lane,* supra, and *Union Railway Co. v. Carter,* supra, the employer was held liable to the plaintiff for punitive damages assessed against its employee. Also, precedent exists for holding an insurer liable on a surety bond on a public officer for punitive damages arising from the misconduct of such officer's subordinate. In support of this statement are the cases of *State ex rel. Coffelt v. Hartford Accident & Indemnity Co. et al.,* 44 Tenn.App. 405, 314 S.W.2d 161 (1958), and *Garner v. State ex rel, Askins,* 37 Tenn.App. 510, 266 S.W.2d 358 (1953).

Of course, it is true in the Lane and Carter cases, where the employer was held vicariously liable for punitive damages assessed against its employees, he had a cause of action against such employee to recover the amount paid out in response to the judgment. But, this is always true in every case when the principle is caused to pay damages for the negligent conduct of his servant. In most cases, however, the employer or the principle is left only with a worthless cause of action against his employee or servant, in which event the latter escapes liability because he is without funds to pay a judgment if one be obtained against him.

In the case of *Home Beneficial Association v. White,* supra, it was held that a contract may not be held invalid as against public policy unless some definite public detriment will probably result.

I cannot see that the contract between the parties here is against public policy, nor will the enforcement of the terms thereof result in any detriment to the public.

It would be pure speculation to conclude that by denying coverage that accidents on the highways would decrease or that operators of automobiles would be any more careful in their driving habits or the care with which they operate them. And, too, regardless of how careful the operator may be, situations could and do arise where the jury would feel warranted on the facts of the case in awarding punitive damages when another jury, on the same facts, would feel warranted in denying punitive damages.

My conclusion is that if the insurance industry feels that punitive damages protection should not be afforded under automobile liability policies, it can very easily make a provision in the exclusions section to that effect. Until this is done, I am of the opinion that the insured should receive the coverage sought to be denied in this case.

T.C.A. sec. 56-603(a) provides that every insurer shall file with the commissioner every manual of classifications, rules and rates, every rating plan, etc. Every such filing shall indicate the character and extent of the coverage contemplated and shall be accompanied by the information upon which the insurer supports the filing.

The form of the policy in question and its contents bear the stamp of approval of the Commissioner. The public has constructive notice of such approval and purchases insurance coverage on automobiles with this knowledge.

If change is to be made in the provisions of this standard policy and the coverage afforded thereby, it should be made in the office of the Commissioner and not by the Court.