Rodney A. GASTON
v.
Millard H. GIBSON, Sheriff, et al.
Civ. A. No. 6566.

United States District Court,
E. D. Tennessee, N. D.
Nov. 3, 1969.

Norbert J. Slovis, Lickett, Slovis & Weaver, Knoxville, Tenn., for plaintiff.

Robert B. Ray, Knoxville, Tenn., W. Henry Ogle, Sevierville, Tenn., for defendants.

## MEMORANDUM AND ORDER

ROBERT L. TAYLOR, District Judge.

In this suit the jury found that defendants had violated 42 U.S.C. § 1981 et seq. and accordingly returned a verdict for the plaintiff. Defendants have moved for a new trial.

Plaintiff Rodney A. Gaston, age seventeen, is a student at the University of Tennessee. The following officials of Sevier County, Tennessee, are defendants: Sheriff Millard Gibson; Deputy Sheriffs Willie Taffer, J. C. Flynn and Roy Gibson; Constable O. P. Rauhuff; and Justice of the Peace Loren Kirby. Western Surety of Chicago, surety upon required statutory bonds, is also a defendant.

After the homecoming football game at the University of Tennessee on November 2, 1968, plaintiff was one of several students who attended a party in the Smoky Mountain National Park. During the evening three of these students were injured in an automobile accident within the Park. The injured persons were taken to the Sevier County

Hospital north of the Park. At the request of the Park Service, the Sevier County Sheriff's Department dispatched officers to the hospital to inquire about the injured students. Plaintiff accompanied by five friends, also went to the hospital to inquire about the injured persons. By various estimates, plaintiff was one of a group of ten to twenty-five students that assembled at the hospital. Plaintiff had been talking with some of his friends inside the hospital for about five minutes when Deputy Partin asked him to leave. Plaintiff testified he had done nothing to justify such a request.

Before plaintiff could react to the order, Constable Rauhuff stopped him and told him he was under arrest. Rauhuff testified that he had answered the call from the Sheriff's Department with Deputy Taffer. The twenty to twenty-five students there had been noisy for some ten to fifteen minutes. From thirty feet away, he saw Deputy Partin speak to plaintiff and heard plaintiff call Partin a S.O.B. Rauhuff, a corpulent man of about six feet, two inches and weighing between 220–240 pounds, then arrested plaintiff, who is of medium build. Rauhuff testified plaintiff shoved him against the wall, and in response he slapped plaintiff with an open hand, knocking plaintiff to the floor.

Plaintiff testified that he said nothing to Partin. Partin stated that he did not hear the plaintiff curse him. Plaintiff denies shoving Rauhuff and says Rauhuff, without provocation, struck him violently in the mouth. Plaintiff's lip was cut and five stitches were required to close the cut. Plaintiff's head struck the floor violently when he was knocked down. He testified that this blow caused a severe headache which has continued. Arnold, a witness for the plaintiff, testified that the plaintiff looked dazed and his face was full of blood after the blow.

Rauhuff then picked plaintiff from the floor and put him in Deputy Taffer's custody for transportation to jail. Rauhuff never advised plaintiff of his constitutional rights.

Loren Kirby, who had previously been at the Sheriff's Office during the evening, had gone to the hospital just out of curiosity. Deputy Ledford had gone with him to the hospital.

Deputy Flynn was also with Kirby. Kirby was in the parking lot of the hospital with other friends of the injured persons who had come from the Park. Rauhuff told Kirby he wanted a warrant for plaintiff. Kirby asked Rauhuff what had the plaintiff been doing. Rauhuff stated that he had been "cursing." Kirby then told Rauhuff to take plaintiff to jail and he would issue the warrant after he returned to the jail. Kirby testified that he took the plaintiff's driver's license to retain it for the Park Service, but no reason was given why the Park Service wanted plaintiff's driver's license. Kirby stated he did not realize that he had plaintiff's driver's license.

On the way to the jail, plaintiff complained that his lip was bleeding. Deputy Taffer replied, "If you say anything, I'll bust the other side of your lip." Taffer denied this statement. Taffer and Rauhuff were listed as the arresting officers on the Sheriff's records.

When plaintiff reached the jail, he was booked and confined by Jailer Roy Gibson before a warrant was issued. Deputy Gibson testified that after he determined plaintiff was seventeen, he called the juvenile judge and was told to lock him up. Gibson said plaintiff was placed in a cell by himself and the door was not locked. The chaperone at the party posted plaintiff's bond about an hour after he was incarcerated. She corroborated plaintiff's testimony that the door was locked. Plaintiff's case was set for hearing November 15, 1968 and remanded to juvenile court. The record is silent as to whether there have been further proceedings.

Plaintiff's medical bills total $736.60. Plaintiff reported initially to the University of Tennessee Infirmary. He was referred to Dr. Turney, a Knoxville neurosurgeon, and Dr. Turney had him ex-

amined by Dr. Boswell, a specialist in neurology and psychiatry. Dr. Boswell testified that an EEG study suggested some injury to the brain. Dr. Turney referred plaintiff to Dr. Meacham, a neurological surgeon in Nashville, for an extensive examination during the Christmas holidays. Dr. Meacham deposed that all his tests were within normal limits. Plaintiff's chief complaints were of headaches that interfered with his studies. He testified that he cannot now participate in any athletics except bowling because of these headaches.

Deputy J. C. Flynn testified that he went to the hospital with Justice of the Peace Kirby, and that he was outside of the hospital at the time of the arrest. It may be inferred that he accompanied Kirby on the return trip to the jail. There is also an inference that he was present when Rauhuff told Kirby to issue the arrest warrant, but no proof that he took an active part in the discussion. At oral argument on the motion for a new trial, the Court sustained his motion for a directed verdict without objection from counsel because there was no evidence to support the verdict.

■ It is contended that the evidence does not support a verdict against the defendant Sheriff, especially for punitive damages. Defendant cites Earley v. Roadway Express, 106 F.Supp. 958, a 1952 opinion of this Court. In dicta this Court said that wanton conduct is imputed to the master "where the nature of the employment * * * is such that the master must contemplate the use of force by the servant" in the normal performance of his duties. That language applies here.

■ Each defendant's main contention is that the verdict of $10,000.00 compensatory and $30,000.00 punitive damages is excessive and shows prejudice by the jury. There are several civil

rights cases where verdicts were less than a total of $10,000.00.[1] However, in suits where punitive damages are proper, there have been larger verdicts. In Butts v. Curtis Publishing Company, 225 F.Supp. 916 (N.D.Ga., 1964), a verdict of $400,000.00 punitive was held proper in a libel and slander case. In Bucher v. Krause, 200 F.2d 576, 587 (C.A.7, 1953), $100,000.00 was held proper when a gunshot wound caused serious and permanent damage to plaintiff's buttocks. In Reynolds v. Pegler, 223 F.2d 429 (C.A.2, 1955) $1.00 compensatory damages and $175,000.00 punitive damages in a libel and slander case were approved. In addition to obvious common law torts defendants committed, the entire procedure for handling juvenile offenders in Tennessee was disregarded. T.C.A. §§ 37–250, 37–251, 37–252. Even procedural rights given adult offenders were not observed. T.C.A. § 40–806. The conduct of defendants showed disregard for procedural safeguards which our Anglo-American system has established. This Court is reluctant to invade the particular province of the jury in evaluating the value of civil rights. Collum v. Butler, 288 F.Supp. 918 (N.D.Ill., 1968). The shocking conduct shown rebuts any inference of prejudice and passion in the jury's verdict.

■■ Western Surety Company contends that it is not liable for any punitive damages. It is clear under Tennessee law that the surety would be liable for punitive damages. State ex rel. Coffelt v. Hartford Accident and Indemnity Co., 44 Tenn.App. 405, 314 S.W.2d 161 (1958); Garner v. State ex rel. Askins, 37 Tenn.App. 510, 266 S.W.2d 358 (1953); and Lazenby v. Universal Underwriters Ins. Co., 214 Tenn. 639, 383 S. W.2d 1. However, Tennessee has refused to enforce the civil rights statutes. Chamberlain v. Brown, Tenn., 442

1. Rhoads v. Horvat, 270 F.Supp. 307 (D. Col., 1967); Brooks v. Moss, 242 F.Supp. 531 (W.D.S.C., 1965); McArthur v. Pennington, 253 F.Supp. 420 (this Court, 1963); Rue v. Snyder, 249 F.Supp. 740 (E.D.Tenn., 1966); Solomon v. Pennsylvania R. R., 96 F.Supp. 709 (S.D.N.Y., 1951); Antelope v. George, 211 F.Supp. 657 (D.C.Idaho, 1962); Jackson v. Duke, 259 F.2d 3 (C.A. 5, 1958); Collum v. Butler, 288 F.Supp. 918 (N.D.Ill., 1968).

**6**

S.W.2d 248 (1969). Furthermore, federal courts have held that damages under the civil rights statutes are governed by federal common law. Basista v. Weir, 340 F.2d 74 (C.A.3, 1965); Caperci v. Huntoon, 397 F.2d 799 (C.A.1, 1968).

We are unable to find any cases discussing a surety's liability under these statutes. While recognizing that the federal law should govern, we feel that the obligation of the surety is, in realty, a matter of contract between the principal and surety. These bonds are required by statute. T.C.A. § 8–1901 et seq. Consequently, this Court believes it should follow the declarations of the Tennessee courts about the extent of the surety's liability. See Sclarenco v. Chicago Bonding Co., 236 F. 592 (W.D.Ky., 1916). We believe that the surety is liable for punitive damages.

Having considered the new trial motions filed by each defendant and each ground asserted in support thereof, and believing that each motion if lacking in merit, except the motion of J. C. Flynn which has heretofore been sustained, it is, therefore, ordered that each motion be, and same hereby is, denied.