Linda Sharon MULLINS,
Plaintiff-Appellant,

v.

Wendell MILLER, Defendant,

and

Insurance Company of North American,
Defendant-Appellee.

Supreme Court of Tennessee,
at Knoxville.

Dec. 17, 1984.

Glenn R. Copeland, Chattanooga, for plaintiff-appellant.

John D. Barry, Chattanooga, for defendant-appellee.

## OPINION

HARBISON, Justice.

This case involves the question of whether punitive damages may be recovered from an uninsured motorist insurance carrier under the provisions of the applicable statutes, T.C.A. §§ 56–7–1201 to 1206 or under the provisions of the policy issued to the claimant, who is appellant here.

Appellant sustained personal injuries when her automobile was struck by a vehicle operated by Wendell Miller in Dalton, Georgia. Miller was intoxicated and was driving recklessly. He was not covered by any policy of liability insurance. Appellant had a liability policy issued by appellee Insurance Company of North America with uninsured motorist coverage.

In a suit against Miller for personal injury, property damage and punitive damages, appellant also brought in her uninsured motorist carrier pursuant to T.C.A. § 56–7–1206, and in a subsequent trial she received an award for personal injury, property damage, and $2000 in punitive damages. In post-trial proceedings the trial judge set aside the award of punitive damages, and this action was affirmed by the Court of Appeals.

T.C.A. § 56–7–1201(a) requires that any automobile liability insurance policy issued in this state must also provide cover-

age with limits no less than those required under the Financial Responsibility Law, T.C.A. § 55–12–107,

"... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."

Subsequent amendments to the statutes also require that the policy holder be given an opportunity to purchase property damage coverage. T.C.A. § 56–7–1201(c).

Originally the coverage required under these statutes was basically geared to the limits of coverage provided under the financial responsibility law, *supra*. Over a decade ago, however, the General Assembly amended the statutes so as to require underwriters to offer an insured limits equal to those for bodily injury liability in the insured's motor vehicle liability policy, and the same is now true with respect to property damage coverage. Subsequent amendments required that policies automatically provide such additional coverage, unless the insured rejects it in writing. Present statutes also require that if the insured carries any "umbrella insurance policy" which includes automobile liability insurance, the underwriter must offer uninsured motorist coverage with limits equal to those provided in the umbrella policy. T.C.A. § 56–7–1201(a)(3).

As pointed out in the dissenting opinion, records of the legislative debates and such other history as is available contain no express reference to the coverage of awards for punitive damages. Originally the statutes made no provisions whatever for property damage and simply covered awards for personal injuries. As pointed out above, however, subsequent amendments required broadened coverage for property damage and a mandatory offer to the policyholder of bodily injury coverage equivalent to that contained in the policyholder's own liability coverage.

In our opinion, these amendments indicate a legislative intent to equate unin-

sured motorist coverage with liability insurance coverage in many respects. There is no evidence in the record before us as to premium structures, costs of underwriting, and the like. Nevertheless, it is clear that, basically, an uninsured motorist policy is to be treated generally as a motor vehicle liability policy in many essential respects. The General Assembly at no point has expressed any intention that coverage be limited to compensatory damages only. In requiring property damage coverage and in requiring limits equivalent to those purchased in liability policies, it seems to us that the General Assembly has expressed its intention that all damages which can legally be recovered under a liability policy shall also be recoverable under an uninsured motorist policy.

It seems illogical to us, for example, that an insured motorist could recover $10,000 in compensatory damages and $40,000 in punitive damages if he were struck by an insured drunken driver with $50,000 limits, but that he could only recover $10,000 if he were struck by an uninsured drunken driver, even though the insured's own policy provided limits of $50,000 for damages caused by an uninsured motorist. We do not believe that this result was envisioned or intended by the General Assembly in requiring underwriters to offer increased limits equivalent to those carried in liability insurance policies.

It is true that uninsured motorist insurance is written on a somewhat different basis from liability insurance. See *Hill v. Nationwide Mutual Insurance Co.*, 535 S.W.2d 327, 330 (Tenn.1976). Strictly speaking, uninsured motorist coverage is neither first-party nor third-party insurance. It has aspects of both. The insured pays the premiums, and to that extent it is somewhat like first-party insurance. Unlike that type of insurance, however, the uninsured motorist policy does not pay benefits unless and until liability of a third party—the uninsured motorist—is established. The insurance carrier may avail itself of all defenses available to that third party—such as lack of negligence, lack of

causation, extent of damages, contributory fault, and the like. It thus has available to it numerous defenses other than regular policy exclusions and conditions as approved by the Commissioner. It is, therefore, basically liability insurance for a third party—the uninsured motorist—as was recognized by this Court in one of the early cases dealing with the first versions of the statutes. *See Glover v. Tennessee Farmers Mutual Insurance Co.*, 225 Tenn. 306, 313, 468 S.W.2d 727, 730 (1971) (intent and purpose of statutes is to provide protection "by making the insurance carrier stand as the insurer of the uninsured motorist ....").

■ It is well settled in this state that a policy of liability insurance covers punitive damages as well as compensatory damages. *Lazenby v. Universal Underwriters Insurance Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964). In that case policy language almost identical to that contained in the uninsured motorist statutes and to the policy in the present case was held to cover punitive damages.

As pointed out in the dissenting opinion, courts in other states which have considered this issue have reached divergent results. The matter is primarily one of legislative intent, and the General Assembly clearly could exclude punitive damages from coverage, and limit awards to compensatory damages only, if it saw fit to do so. We do not believe that the language contained in the statutes at the time of the accident involved in this case or in the present statutes is restrictive, and we do not construe it as requiring coverage for compensatory awards alone. If the General Assembly desires to make this change, the result can be achieved by a very brief amendment to the statutes.

■ Further, even if the statute should be construed not to require coverage for punitive damages, still it seems to us that the policy in question did cover them. It provided coverage to its insured for *all* sums which the insured

"... shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured ...."

Punitive damages surely are sums which can be recovered as damages from the owner or operator of a motor vehicle because of bodily injury inflicted upon a plaintiff. Punitive damages are clearly covered under policies of liability insurance obligating the insured to pay all sums for which the insured is legally liable. *See Lazenby v. Universal Underwriters Insurance Co., supra.* Unless the holding of the *Lazenby* case or its interpretation of the policy language is to be altered or overruled, then, in our opinion, punitive damages are as clearly included in all sums which the insured is entitled to recover as they are in all sums for which an insured is legally liable.

Again, if the uninsured motorist statutes themselves should be construed as not to require coverage for punitive damages as a matter of law, it would be a very simple matter for insurance carriers to so write their policies as to limit insurance coverage to compensatory damages only, if permitted by the Commissioner. The present policy contains no such limitations but obligates the insurance carrier to pay *all* sums which the insured is legally entitled to recover from an uninsured motorist. In our opinion this coverage includes awards of punitive damages up to the policy limits.

For these reasons, the judgments of the courts below are reversed. The jury verdict awarding punitive damages is reinstated. The cause is remanded to the trial court for any further proceedings which may be necessary. All costs are taxed to appellee.

COOPER, C.J., and BROCK, JJ., concur.

DROWOTA, J., files dissent in which FONES, J., joins.

DROWOTA, Justice, dissenting.

As stated in the majority opinion, the primary issue in this case is whether punitive damages may be awarded under (1) the

Tennessee Uninsured Motorist Statute, T.C.A. § 56–7–1201 et seq. or (2) the language of the policy affording uninsured motorist coverage. I file this dissent because I feel this issue is one of great importance in the area of tort litigation, and because I feel the majority has failed to deal in its opinion with the theory and purpose of punitive damages. Punitive damages are not designed to compensate the Plaintiff, but to punish and deter the wrongdoer. The majority opinion assesses an innocent party, INA, with punitive damages while the wrongdoer, Miller, goes unpunished.

Plaintiff-Appellant, Linda Sharon Mullins, filed suit against the Defendant-uninsured motorist Miller for personal injury, property damage and punitive damages. She also directed process to INA as her uninsured motorist carrier. Plaintiff was unable to obtain service upon the Defendant Miller through the ordinary process of law and service was obtained on him by publication. Plaintiff moved the trial court, pursuant to T.C.A. § 56–7–1206, to force INA to proceed as if it were the only Defendant. INA responded to Plaintiff's demand by filing an answer in its own name. INA then filed a motion for judgment on the pleadings or partial summary judgment as to the Plaintiff's claim of punitive damages against it. The trial court denied INA's motion, granting INA leave to renew its motion upon the trial of the case.

The case proceeded to trial in the absence of the Defendant Miller. At the close of the proof, the Plaintiff moved for a directed verdict against Miller on the issue of liability, which motion was granted. The jury returned a verdict in favor of Plaintiff against Miller and INA. In addition to compensatory damages for personal injury, lost wages, medical expense and property damage, the jury awarded Plaintiff punitive damages. INA then moved for an order reducing the verdict as to it, which motion challenged Plaintiff's right to recover punitive damages from her own carrier. The trial court sustained INA's motion and set aside the punitive award as

to INA, finding that "the Defendant INA is not legally responsible to Plaintiff to satisfy the award of punitive damages." The court then confirmed the award against the Defendant Miller in all respects.

Plaintiff appealed the trial court's action in setting aside the punitive damage award against INA. The Court of Appeals affirmed the action of the trial court holding that the insurer was not required to pay punitive damages on an uninsured motorist claim under either Tennessee's Uninsured Motorist Statute or the policy.

The Uninsured Motorist Endorsement in this case reads, in pertinent part, as follows:

### DAMAGES FOR BODILY INJURY AND PROPERTY DAMAGE

The company will pay all sums which the insured ... shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured....

The Uninsured Motorist Endorsement defines bodily injury:

Bodily injury means bodily injury, sickness or disease, including death resulting therefrom.

The policy language used in this case, and that contained in the statute are quite similar. The Tennessee Uninsured Motorist Statute provides in pertinent part:

No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, and not less than limits for bodily injury or death described in Section 55–12–107, ... *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom;* ... (Emphasis added)

T.C.A. § 56–7–1201 (previously T.C.A. § 56–1148).

In *Thaxton v. Travelers Indem. Co.*, 555 S.W.2d 718, 720 (Tenn.1977), after citing the above emphasized portion of the statute, the Court stated: "The insurance required by the statute is for the loss suffered by the insured, not the liability incurred by the uninsured motorist." It would appear that the language of the statute, "damages ... *because of* bodily injury, sickness or disease, including death, resulting therefrom," more properly describes compensatory than punitive damages since "because of" means "by reason of" or "on account of." Punitive damages are not strictly speaking damages awarded "because of bodily injury" but because of intentional, willful or grossly negligent acts of the tortfeasor.

The theory of punitive damages in Tennessee was described by Justice Harbison in *Huckeby v. Spangler*, 563 S.W.2d 555, 558–559 (Tenn.1978): "In this state, the theory of punitive damages is not to compensate an injured plaintiff for personal injury or property damage, but to punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him." Punitive damages relate to the nature of the defendant's actions in inflicting or causing the injury rather than to the extent of the injury that results. *Breault v. Friedli*, 610 S.W.2d 134, 136 (Tenn.App.1980); *Hutchison v. Pyburn*, 567 S.W.2d 762, 764 (Tenn.App. 1977). Thus it can be seen that the theory and purpose of punitive damages is contrary to the theory and purpose of the uninsured motorist statute. To allow a recovery from the uninsured motorist carrier would not provide a deterrent effect as to the Defendant tortfeasor Miller.

I envision several problems if punitive damages are allowed in this type of case as the majority holds. As pointed out in *Breault v. Friedli, supra* at 136,

Evidence concerning the financial condition of the defendant is essential in determining the amount of punitive damages.

... The damages which would operate as a proper punishment to one man might be inadequate to that effect upon another, by reason of their difference in pecuniary condition; and on the contrary, a verdict that would be scarcely regarded by a wealthy man, might be ruinous to a poor man.

*Odum v. Gray*, 508 S.W.2d 526, 534 (Tenn.1974).

If the uninsured motorist is never found, as in this case, the jury cannot make an enlightened decision for they would have no knowledge of the defendant's financial condition. Any award would necessarily be speculative. Furthermore, the wrongdoer would neither be punished nor deterred. A finding that the INA policy provides coverage for punitive damages would thwart the jury's reason for imposing punitive damages—to punish the Defendant tortfeasor. The Maine Supreme Judicial Court, in *Braley v. Berkshire Mut. Ins. Co.*, 440 A.2d 359 (Me.1982), adopted similar rationale as I shall discuss later in this dissenting opinion.

The legislative history of the statute gives us no explicit answer to the question of whether the statute entitles the insured to recover from his insurer punitive damages awarded against an uninsured motorist. However, the tone of the comments during the debates on the original act in 1967 do indicate that the sponsors of the bill were probably thinking primarily of compensatory damages.[1]

Plaintiff avers and the majority opinion appears to hold that *Lazenby v. Universal Underwriters Insurance Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964) is controlling. In *Lazenby* this Court held that under the

---

1. Representative Carter stated that the bill "does not provide for any property damage but simply provides for bodily injury damage." (Record H–239, H.B. 479, March 9, 1967). It is difficult to imagine that the legislators contemplated this differentiation between two types of compensatory damages and yet meant to include punitive damages, which were never mentioned, within the coverage of the Act.

language of the policy an automobile liability insurance carrier is required to pay punitive damages assessed against its insured as the result of an automobile accident. The reasons which motivated this Court to hold that punitive damages are recoverable of a liability carrier do not apply in the uninsured motorist situation. I feel the holding in *Lazenby* is limited to liability insurance cases and is neither dispositive nor controlling in the uninsured motorist context.

Several jurisdictions which have been confronted with this same issue have reached differing results. Texas and Virginia have held that a state's uninsured motorists statute and the policy provisions afforded coverage of punitive damages: *Home Indemnity Co. v. Tyler*, 522 S.W.2d 594, 596–597 (Tex.Civ.App.1975); *Lipscombe v. Security Insurance Co. of Hartford*, 213 Va. 81, 189 S.E.2d 320, 323 (1972). Three decisions from other jurisdictions have reached a contrary result holding that punitive damages are not payable to an insurance company under the state statute and the policy: *Braley v. Berkshire Mut. Ins. Co.*, 440 A.2d 359, 361–362 (Me.1982); *Suarez v. Aguiar*, 351 So.2d 1086 (Fla. 3d DCA 1977); *Laird v. Nationwide Insurance Company*, 243 S.C. 388, 134 S.E.2d 206, 210 (1964).

The Florida Uninsured Motorist Statute, in pertinent part, reads:

> "[uninsured motorist coverage] ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom."

*West's Florida Statutes Annotated*, 18B § 627.727. This language is identical to that emphasized in the Tennessee statute cited earlier. The District Court of Appeal of Florida, in *Suarez v. Aguiar, supra*, at 1088, in construing their statute, held that "the uninsured motorist coverage in the

State of Florida does not include liability for punitive damages." The court based its decision, in part, on the fact that "[p]unitive damages are distinguished from compensatory damages in that punitive damages do not have as their primary purpose the making of a plaintiff whole after a bodily injury, sickness or disease [citations omitted]."

The South Carolina Supreme Court, in *Laird v. Nationwide Insurance Company, supra*, (followed in *Hanna v. State Farm Mutual Automobile Insurance Co.*, 233 F.Supp. 510, 515 [E.D.S.C.1964]), denied punitive damages under their statute and the policies. First, it stated that the purpose of uninsured motorist insurance was to provide recompense to innocent persons. Because both the statutes and the insuring clause in the policy referred to bodily injury and only compensatory damages satisfy bodily injury, punitive damages could not be awarded. No provision of the act required the uninsured motorist endorsement to insure against any and all liability. The court then noted that "[t]here is nothing said or implied that the insurer would be liable for punitive or exemplary damages. If such damages had been in contemplation of the Legislature, it could have easily provided therefor in said statutes." [2]

In *Braley v. Berkshire Mut. Ins. Co., supra*, the Maine Supreme Judicial Court, in a unanimous decision, vacated an award of punitive damages under the uninsured motorist provisions of an insurance contract almost identical to that in the present case and emphasized that the damages covered were awarded "because of bodily injury" under the policy and "for bodily injury" under the statute. Punitive damages, it noted, were not "for bodily injury" but "for the protection of society." The Court reiterated that the legislature's intent in passing the act was to assure a person injured by an uninsured motorist protection "to the extent of his actual loss." Because the wrongdoer does not pay the damages, the

---

**2.** Since the decision in *Laird*, the South Carolina legislature amended its statutes to require coverage of punitive damages under uninsured motorist insurance. *See* S.C.Code Ann. §§ 56–9–810(4), 56–9–830 (1977).

proper justification for punitive damages—deterrence—is not achieved. The court then distinguished the case where punitive damages were covered under liability provisions by noting that at least with liability insurance the possibility of raising the insured's premiums achieves some deterrence.[3] Also, although the insurance company theoretically has a right of recovery via subrogation, the probability of recovery is negligible and yields no deterrent effect. The court also noted that one of the traditional measures of punitive damages, their deterrent effect based upon the actual wealth of the defendant, would also be lacking in the case of uninsured coverage.

I agree with the reasoning and logic of the Maine Supreme Judicial Court. Neither the statute nor the policy in this case requires the payment of punitive damages. The tenor of the legislative debates and the language of the statute itself indicates that the damages required to be covered by the bill were compensatory and not punitive.

The Plaintiff, Mullins, should have been fully compensated for her injury by the award of compensatory damages. It should be remembered that the purpose of punitive damages is not to compensate the Plaintiff, and any benefit the Plaintiff receives from such an award is only incidental. From Plaintiff's point of view, punitive damages are merely a windfall. To grant Plaintiff punitive damages against INA would require one not guilty of any misconduct to pay while the Defendant Miller, who was guilty of willful and wanton misconduct, would go unpunished. This, I feel, would be against public policy, and if such damages are to be assessed against an innocent party and the wrongdoer go free, then such a decision should be made by the legislature.

I feel that the trial court and the Court of Appeals properly denied Plaintiff recovery of punitive damages from her own carrier and that the judgment of the courts below should be affirmed. I am authorized to state that Justice Fones concurs in this dissenting opinion.

---

**3.** In this case, INA points out that in liability policies, whether they issue upon application or are meted out under the assigned risk plan, the insurer has some means by which to formulate its premium. If the proposed insured is a good risk he will pay less in liability premium. If he is a poor risk, he will pay more for his liability coverage. Therefore, those who by past performance indicate a propensity toward exposure pay and bear an equitably greater premium and a greater share of the exposure. However, in the uninsured motorist context neither the company nor the insured has any means whatsoever by which to control or predict the conduct of an uninsured motorist.