**Bekkie A. CARR and Jeffrey Carr, Appellants,**

v.

**Fred Homer FORD and Cumis Insurance Society, Inc., Appellees.**

Supreme Court of Tennessee, at Knoxville.

June 8, 1992.

Paul T. Gillenwater, Harold E. Bishop, Knoxville, for appellants.

William A. Simms, Knoxville, for appellees.

## OPINION

DAUGHTREY, Justice.

This appeal requires us to interpret an amended portion of Tennessee's Uninsured Motor Vehicle Coverage Statute. The question is whether injured motorists may recover punitive damages under uninsured motorist coverage, in the absence of an explicit agreement that such coverage will be provided under the policy. We answer this question in the negative and hold that the 1986 amendment to the statute limits requisite uninsured motorist coverage to compensatory damages. Unless there is a specific contractual clause providing for punitive damages, insureds may not recover

punitive damages from their insurers under uninsured motorist coverage.

The appellants, Bekkie A. Carr and Jeffrey Carr, were covered persons within the definition of the motor vehicle insurance policy issued to them by the appellee, Cumis Insurance Company, at the time that the vehicle in which they were riding collided with one driven by an uninsured motorist. A judgment was rendered against the uninsured motorist in the amount of $4,989 in compensatory damages and $25,000 in punitive damages. Cumis, as the Carrs' uninsured motorist carrier, paid them the compensatory damages but asserted in the trial court that it was not liable for punitive damages under T.C.A. § 56–7–1201(a), as amended in 1986. The trial court agreed with the insurer, ruling that the amended statute prohibited punitive damages under the Uninsured Motor Vehicle Coverage Statute. In a divided opinion, the Court of Appeals affirmed the lower court's judgment.

On appeal from the Court of Appeal's decision, the Carrs urge this Court to rule that the 1986 amendment, which added the word "compensatory" to two sub-sections of T.C.A. § 56–7–1201, does not automatically prohibit recovery of punitive damages under uninsured motorist coverage. The Carrs take the position that the amendment permitted insurers to exclude coverage for punitive damages, but only by including an explicit statement in the policy. This, they contend, Cumis failed to do. Cumis counters that the amendment is an absolute prohibition against awarding punitive damages under uninsured motorist coverage. A third possible construction of the amendment, not advanced by either party, is that punitive damages are ordinarily prohibited unless the policy explicitly includes a provision to cover for punitive damages.

We begin with an examination of the amended language contained within T.C.A. § 56–7–1201. Sub-section (a), with the 1986 amendment in emphasis, provides:

Every automobile liability insurance policy ... shall include uninsured motorist coverage ... for the protection of persons insured thereunder who are legally entitled to recover *compensatory* damages from owners or operators of uninsured motor vehicles ...

Subsection (b), also with the amendment in emphasis, reads in part:

With respect to bodily injury to an insured while occupying an automobile not owned by the injured party, the following priorities of recovery under uninsured motorists shall apply: (1) the uninsured motorist coverage on the vehicle in which the injured party was an occupant shall be the primary uninsured motorist coverage; (2) should that primary uninsured motorist coverage be exhausted due to the extent of *compensatory* damages, then the injured occupant may recover as excess from the insurance on the vehicle owned by the insured that provides the highest limits of uninsured motorist coverage.

Typically, statutory construction involves giving language its natural and ordinary meaning in order to accomplish the intention of the legislature. *State v. Williams*, 690 S.W.2d 517 (Tenn.1985). Unfortunately, in this case, the addition of the word "compensatory" to the two sub-sections does little to clarify the question presented by the parties, because the amended statute does not indicate whether punitive damages are either permissive or prohibited. In order to resolve this issue, we must turn to cases construing the statute as it existed before and after amendment, and to the legislative history leading up to the amendment. *See Austin v. Memphis Publishing Co.*, 655 S.W.2d 146 (Tenn.1983).

The circumstances surrounding the amendment to the Uninsured Motor Vehicle Coverage Statute present a rare opportunity to observe the interaction between the judicial and legislative branches of this state's government. Prior to amendment in 1986, this Court construed T.C.A. §§ 56–7–1201 *et seq.* as requiring that any automobile liability insurance policy issued in Tennessee provide uninsured motorist coverage for punitive damages, as well as compensatory damages. *Mullins v. Miller*, 683 S.W.2d 669, 670 (Tenn.1984). This ruling was rooted in an interpretation

of legislative intent, and the Court reasoned that punitive damages should be excluded from uninsured motorist coverage, if at all, only by legislative amendment. Justice Harbison, writing for a majority of this Court, invited the legislature to change the statute if requiring uninsured motorist coverage for punitive damages was not proper:

> If the General Assembly desires to make this change, the result can be achieved by a very brief amendment to the statutes.

*Id.* at 671.

Our decision in *Mullins* was accompanied by a dissent authored by Justice Drowota and joined by Justice Fones. *Id.* The dissenting opinion advanced an alternative interpretation of the Uninsured Motor Vehicle Statute—one which found that "the damages required to be covered by the bill were compensatory and not punitive." *Id.* at 675. Justice Drowota expressed the opinion that an award of punitive damages was essentially a windfall to the plaintiff; that it was not intended to compensate an injured party; and that the true purpose of punitive damages was to punish the willful and wanton misconduct of the wrongdoer. Hence, he reasoned, the majority rule meant that in cases involving uninsured motorists, the wrongdoer would remain unpunished, and an innocent party, the insurer, would be penalized. Justice Drowota concluded that such a result ran counter to public policy. *Id.*

By amending the statute in 1986, the General Assembly apparently accepted Justice Harbison's invitation and echoed many of the concerns voiced in Justice Drowota's dissenting opinion. In House debates over adoption of the 1986 amendment, Representative John Tanner stated that he read the Court's decision in *Mullins* as a matter for the legislature to address if the Court was in error. He announced that "we happen to think it [the majority opinion] is in error." Regular Session of the House

(Feb. 5, 1986). In describing the proposed amendment to change the *Mullins* ruling, Representative Tanner declared that the amendment limited the required uninsured motorist coverage to compensatory damages. House Calendar & Rules Committee (January 30, 1986). He explained that this change in the law was based on the theory that "punitive damages are a means to punish one who has done wrong, and under an uninsured motorist situation, of course, there is no wrongdoer, in terms of the company or people who are paying the bill." *Id.*

Similar reasoning was expressed in Senate debates over the measure. Senator Curtis Person referred to the dissenting decision in *Mullins* as being the reason that the bill was before the legislature. He explained that the bill was intended to change the rule announced by the majority of this Court in *Mullins,* so that "punitive damages should not be assessed against an uninsured motorist carrier." Regular Session of the Senate (April 17, 1985).

With these statements of legislative history in mind, we think the meaning of the amendment to the Uninsured Motor Vehicle Coverage Statute becomes apparent. In construing ambiguous statutory language, the controlling consideration is legislative intent. *Southern Railway Co. v. Fowler,* 497 S.W.2d 891 (Tenn.1973). The legislative history reflects an intent to relieve insurance carriers from having to insure for punitive damages assessed against uninsured motorists. We hold that the addition of the word "compensatory" to T.C.A. § 56–7–1201 was intended to and does exclude punitive damages from the statutory requirement that all motor vehicle insurers provide uninsured motorist coverage.[1]

The parties present for our consideration two cases decided after adoption of the amendment. In *Crimson v. Curtiss,* this Court observed that the legislature had

---

1. This holding in no way affects the rights of plaintiffs to collect punitive damages directly from an uninsured motorist. *See* Regular Session of the House (Feb. 5, 1986) (Representative Tanner commenting that an injured person can sue the wrongdoer for punitive damages). Our ruling merely holds that an insurance carrier is not required to provide coverage for punitive damages under uninsured motorist insurance.

limited coverage of uninsured motorist policies to compensatory damages by amending the Uninsured Motor Vehicle Coverage Statute. 785 S.W.2d 353, 354 (Tenn.1990). As the appellee asserts, it is noteworthy that Justice Harbison wrote both the majority decision in *Mullins* and the unanimous decision in *Crimson*. It stands to reason that this Court, which invited the legislature to amend the statute if the interpretation in *Mullins* was incorrect, would acknowledge in *Crimson* that the legislature's action was a correction of the *Mullins* rule.[2]

The appellants also direct our attention to the unpublished opinion of the Court of Appeals in *Hilton v. Dougherty*, 1989 WL 37263 (E.S., April 20, 1989). In *Hilton*, the court held that unless an insurance company explicitly excluded coverage for punitive damages awarded against uninsured motorists, it was liable for all punitive damages. *Id.* at 4. *Hilton*, as it turns out, was based on our opinion in *Mullins*. As noted above, however, a review of the legislative history has shown that the rule laid down in *Mullins* was changed by the General Assembly in the 1986 amendment to T.C.A. § 56–7–1201. The authority relied on in *Hilton* was not dispositive on the issue of punitive damages, and we decline to follow its holding.

■ Our ruling today does not affect insurers who decide voluntarily to offer uninsured motorist coverage for punitive damages. Although the legislative mandate was equivocal on this point, as Judge Franks noted in his dissent in this case in the Court of Appeals, nothing in the statute or legislative history indicates an evident intention to preclude parties from contracting for additional uninsured motorist insurance. In the absence of a plain statement of law, we decline to construe the statute in a manner which potentially implicates the limitations on state legislative power set forth by the contracts clause in Article I § 10 of the Constitution of the United States.

2. We need not address the appellants' arguments that the interpretation of T.C.A. § 56–7–1201 in *Crimson* was dicta. We reach the same

After careful consideration of the arguments advanced by the parties, review of the cases cited in the briefs, and judicial notice of the history of the legislative debates regarding the amended statute, we find that as amended, T.C.A. § 56–7–1201 does not require insurers to provide uninsured motorist coverage for punitive damages. We therefore affirm the decision of the Court of Appeals, which in turn affirmed the judgment of the trial court. Costs are assessed equally among the parties.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.

result as in *Crimson* based on our independent review of the legislative and judicial history of the statute.