**Glenn R. WEST, Jr. and Shari West, Plaintiffs–Appellees,**

v.

**Horace M. PRATT, Defendant–Appellee,**

and

**State Farm Mutual Automobile Insurance Company, Uninsured Motorist Insurance Carrier–Appellant.**

Supreme Court of Tennessee, at Knoxville.

Feb. 7, 1994.

Michael W. Ritter, Webster, Sams, Irving & Ritter, Oak Ridge, for plaintiffs-appellees.

Jerry Shattuck, Shattuck & Elledge, Clinton, for defendant-appellee.

Robert Knolton, Robert A. McNees, III, McNees, Knolton & Hayes, Oak Ridge, for Uninsured Motorist carrier-appellant.

## OPINION

DROWOTA, Justice.

This appeal involves the allocation of compensatory and punitive damages between a liability insurance carrier and an uninsured motorist carrier. The issue for our determination is whether the liability carrier must pay the entire compensatory damage award prior to paying any of the punitive damage award. The trial court and the Court of Appeals held that the liability insurance carrier could apportion its applicable limits between compensatory and punitive damages, and that the uninsured motorist carrier is responsible for the unpaid compensatory damages.

This appeal by State Farm Mutual Automobile Insurance Company (State Farm), the uninsured motorist insurance carrier, derives from a tort action filed by the plaintiffs, Glenn and Shari West, against the defendant, Horace Pratt, for injuries the plaintiffs sustained when their automobile was struck by an automobile driven by Pratt. In this action, the plaintiffs received a judgment, based on a jury verdict, of $46,236.80 in compensatory damages in favor of Shari West, and $159.02 in compensatory damages in favor of Glenn West. The judgment also included $15,000 in punitive damages; these damages were not specifically allocated to either of the plaintiffs.

The defendant Pratt was insured by Tennessee Farmers Mutual Insurance Company (Tennessee Farmers), for automobile liability; the policy had liability limits of $25,000 for bodily injury to one person and $50,000 for bodily injuries to two or more persons resulting from a single accident. Tennessee Farmers elected to pay in the following manner: it paid to Glenn West the sum of $7,659.02, which represented $7,500 in punitive damages and $159.02 in compensatory damages; it paid to Shari West the sum of $25,000—its limit of liability for bodily injuries suffered by one person—and it allocated $7,500 toward punitive damages and $17,500 toward compensatory damages. This allocation of the liability limits was specifically noted in a document entitled "Receipt and Satisfaction of Judgment" filed by the plaintiffs with the trial court.

The policy of State Farm, the uninsured [1] motorist carrier of the plaintiffs, included uninsured motorist coverage of $100,000 for bodily injuries suffered by a single person and $300,000 for bodily injuries to two or more persons arising from a single accident. After being apprised that Tennessee Farmers intended to allocate its limits, State Farm filed a motion "for a new trial, or in the alternative, to amend the judgment," requesting the trial court to require Tennessee Farmers to apply the entire $25,000 limit with respect to Shari West toward the satisfaction of her compensatory damages. State Farm argued that the allocation, which resulted in a $7,500 increase in its liability under its uninsured motorist policy,[2] effectively made it liable for the payment of punitive damages, a result prohibited by Tennessee statutory and decisional law. The trial court denied the motion, and the Court of Appeals affirmed the trial court's ruling. State Farm appeals.

Initially, State Farm stresses that uninsured motorist carriers, absent a specific provision in the policy allowing for the recovery of punitive damages, are not liable for the payment of punitive damages recovered by their insureds; it correctly cites our recent decision in *Carr v. Ford,* 833 S.W.2d 68 (Tenn.1992) to support this proposition. State Farm argues that the Court of Appeals erred because this clear public policy, as embodied in the Tennessee Uninsured Motorist Statute, T.C.A. § 56–7–1201(a) [3], and

1. This case actually deals with an underinsured, not uninsured, motorist. However, T.C.A. § 56–7–1202(a) defines an "uninsured motor vehicle" to include an underinsured vehicle. The statute provides:

   A motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death, or damage to property of an insured, and for which the sum of the limits available to the insured under all valid and collectible insurance policies, bonds, and securities applicable to the bodily injury, death, or damage to property is less than the applicable limits of uninsured motorist coverage provided to the insured under the policy against which the claim is made.

   The policy issued by State Farm contains a similar definition of "uninsured motor vehicle."

2. With the allocation by Tennessee Farmers, State Farm's liability under the uninsured motor-

ist policy was $28,736.80 (compensatory damages award of $46,236.80 less the $17,500 allocated to compensatory damages). If Tennessee Farmers had applied its entire liability limits towards the compensatory damages award, State Farm's liability would have been $21,236.80 (compensatory damages award of $46,236.80 less the $25,000 liability limits). Therefore, State Farm's liability was increased by $7,500 ($28,-736.80 less $21,236.80) by the allocation.

3. T.C.A. § 56–7–1201(a) provides:

   Every automobile liability insurance policy . . . shall include uninsured motorist coverage . . . for the protection of persons injured thereunder who are legally entitled to recover *compensatory* damages from owners or operators of uninsured motor vehicles. (Emphasis added.)

affirmed in *Crismon v. Curtiss*, 785 S.W.2d 353 (Tenn.1990), and *Carr*, precludes a liability carrier from indirectly forcing the uninsured motorist carrier to pay punitive damages by allocating its coverage between compensatory and punitive damages.

The appellees, Tennessee Farmers and Glenn and Shari West, counter that the issue before this Court, and before the lower courts as well, does not concern an uninsured motorist carrier's liability for punitive damages, but is merely a question of the liability carrier's freedom to discharge its contractual obligations as it deems appropriate. The appellees argue that because liability insurers, unlike uninsured motorist carriers, are liable for the payment of punitive damages, the Court of Appeals did not err in affirming the trial court's decision to allow the allocation procedure.

## I.

A clear public policy exists in Tennessee that strongly disfavors the payment of punitive damages by uninsured motorist carriers to their insureds. The reasoning underpinning this policy was set forth in the dissenting opinion in *Mullins v. Miller*, 683 S.W.2d 669, 671–675 (Tenn.1984), in which the two dissenting Justices disagreed with the majority's conclusion that uninsured motorist carriers were liable for the payment of punitive damages to their insureds. The dissenting Justices quoted language of § 56–7–1201(a) providing that insureds shall be paid "damages ... for bodily injury, sickness or disease, including death ..." to support their conclusion that the objective of the statute was to compensate injured insureds. The dissenting Justices also stated that the purpose of punitive damages—to punish and deter wrongdoers—is not served by assessing punitive damages against an innocent insurance company while the guilty party—the defendant tortfeasor—is allowed to escape liability. The dissenting Justices therefore believed that forcing uninsured motorist carriers to pay punitive damages constituted a windfall to the plaintiff; and that it served only to increase the cost of uninsured motorist insurance to the public without providing any of the benefits associated with punitive damages.

The reasoning of the *Mullins* dissent was adopted by the Legislature in 1986 when it amended § 56–7–1201(a) to provide that uninsured motorist coverage must be provided in every automobile liability policy to protect insureds "who are legally entitled to recover *compensatory* damages." (Emphasis added). This policy was recently reinforced in *Carr v. Ford, supra*, where this Court held that while uninsured motorist carriers are not *prohibited* by § 56–7–1201(a) from affording coverage for the payment of punitive damages, that statute does not *require* them to pay punitive damages in the absence of a provision in the policy allowing insureds to recover such damages.

In view of this clearly established public policy, we must disagree with the conclusion of the Court of Appeals. While it is technically true that State Farm must pay only compensatory damages after the allocation procedure, the indubitable effect of this procedure is to shift responsibility for the payment of punitive damages from the liability carrier to the uninsured motorist carrier. This result, however, contravenes well established public policy, and the innocuous form of the allocation procedure must not be allowed to override its impermissible substantive effect. See e.g., *Brown v. Canterbury Corp.*, 844 S.W.2d 134, 137 (Tenn.1992) (reviewing court must look to the substance, not form, of relationship between parties in determining whether corporation is "statutory employer" for purposes of worker's compensation); *Bill Brown Const. Co. v. Glens Falls Ins. Co.*, 818 S.W.2d 1, 11 (Tenn.1991) (to hold that doctrine of equitable estoppel cannot be used to provide coverage because insured has not yet paid premium for coverage "would be an unfortunate triumph of form over substance"); *M & M Stamp Co. v. Harris*, 212 Tenn. 158, 368 S.W.2d 752, 755 (1963) ("Our Courts have recognized over the years that in construing statutes we look through the form of the transaction to the substance thereof").

Nor does the invocation by the Court of Appeals of the liability carrier's legal and contractual obligation to pay punitive dam-

ages on behalf of its insured justify the allocation procedure. While it is true that liability carriers are responsible for the payment of punitive damages on behalf of their insureds, *Lazenby v. Universal Underwriters Ins. Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964), it is also true that a liability carrier is responsible only for paying damages—whether those damages be compensatory or punitive—to the *limits of its liability;* there is clearly no legal requirement that the liability carrier satisfy the punitive damages *before* it satisfies the compensatory damages. Therefore, once the liability carrier has paid damages to its limits, its legal obligations are discharged, and an allocation such as this is simply unnecessary: it serves no purpose except to indirectly expose the uninsured motorist carrier to liability for punitive damages.

A very different situation would be presented if the liability carrier was in fact contractually obligated to satisfy as much of the punitive damage award taken against its insured as its limits would allow before satisfying any of the compensatory damage award. In that case, the right of the liability carrier to discharge its contractual duties would be paramount, and the liability carrier would be justified in applying as much of its limits towards the punitive damage award as is necessary to fulfill its contractual obligations. This is not such a case, however, for the liability policy issued by Tennessee Farmers contains no such provision.

Accordingly, we hold that, in the absence of a provision in the policy requiring the liability carrier to pay punitive damages before paying compensatory damages, and in the absence of legislative guidance on this issue, a liability carrier must satisfy the compensatory damage award, to the extent of its limits, before paying any of the punitive damage award. The judgment of the Court of Appeals is reversed, and the cause remanded for further proceedings in accordance with this opinion.

REID, C.J., with separate concurring opinion. O'BRIEN and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.

REID, Chief Justice, concurring.

I concur in the result reached in the main opinion, but write separately because, in my view, the main opinion relies precariously and unnecessarily upon "public policy" as the basis for the decision, unwisely interferes with the parties' constitutional right to contract, and, without explanation, declines to base its holding on the plain meaning of the statutes.

The trial court and the Court of Appeals approved the "allocation" agreement between the plaintiffs and the defendant's liability carrier, Tennessee Farmers. The trial court held that Tennessee Farmers is "entitled to exercise its contractual right to satisfy the judgment in the manner which it deems to best meet its contractual obligations." The Court of Appeals found that not only could the liability carrier "apportion its applicable limits between compensatory and punitive damages," but also that "an uninsured/under insured motorist insurance carrier is responsible for any unpaid compensatory damages." This holding, whereby the courts sanctioned the agreement between the plaintiffs and the defendant's liability carrier, and on that basis increased the liability of the uninsured motorist carrier, is contrary to the statutes defining the liability of an uninsured motorist insurance carrier.

Sections 56–7–1201(a) and (d) (Supp.1993) of the Tennessee Code Annotated require, for the purposes of this case, coverage "for the protection of persons insured thereunder who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles," but limits liability "for an insurer providing uninsured motorist coverage [to] the amount of that coverage as specified in the policy less the sum of the limits collectible under all liability ... policies." Using essentially the same language, Section 56–7–1202 defines an uninsured motor vehicle as a vehicle "whose ... use has resulted in the bodily injury ... [to] ... an insured, and for which the sum of the limits of liability available to the insured under all valid and collectible insurance policies ... is less than the applicable limits of uninsured

motorist coverage provided to the insured." T.C.A. § 56–7–1202 (1989).

Application of these statutes to the case before the Court shows that plaintiff Shari West meets the two requirements necessary to claim benefits under uninsured motorist coverage: she is entitled to recover compensatory damages from Pratt, and Pratt is the owner of an uninsured motor vehicle. The liability of an uninsured motorist insurance carrier, in the absence of a specific provision in the contract, is limited to compensatory damages. *Carr v. Ford,* 833 S.W.2d 68, 68–69 (Tenn.1992). The statutory maximum liability for compensatory damages is the amount of uninsured motorist coverage provided in the policy, which in this case was $100,000 for Shari West, less the "sum of limits collectible under all liability" [1] policies "applicable to the bodily injury ... of the insured," which in this case was $25,000. Since, under the statute, State Farm is not required to pay "the sum of limits collectible under all liability" policies, its liability is the amount whereby the judgment for compensatory damages, $46,236.80, exceeds the limit of $25,000 collectible under Tennessee Farmers's liability policy, or $21,236.80.

The liability of Tennessee Farmers to the plaintiffs is not at issue. Tennessee Farmers and the plaintiffs are at liberty to adjust their rights and liabilities with regard to the judgment as they have agreed or may agree. However, their agreement does not affect State Farm's liability, which is determined by statute.

1. T.C.A. § 56–7–1201(d).